## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY MORGAN, Individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>NETWORK ENGINES, INC., JOHN CURTIS, DOUGLAS G. BRYANT and LAWRENCE A. GENOVESI, )<br><br>Defendants. ) | Civil Action 1:03 cv 12529 JLT |
| EDWIN POWELL MILLER, Individually and On behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>NETWORK ENGINES, INC., JOHN CURTIS, DOUGLAS G. BRYANT and LAWRENCE A. GENOVESI, )<br><br>Defendants. ) | Civil Action 1:04 cv 10022 JLT |

Additional Captions to Follow

### MEMORANDUM IN SUPPORT OF THE MOTION OF THE GUERRERA GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL

| | |
|---|---|
| DAVID DUBROW, Individually and on behalf of all others Similarly Situated, | ) |
| | ) Civil Action 1:04 cv 10096 JLT |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NETWORK ENGINES, INC., JOHN CURTIS, DOUGLAS G. BRYANT and LAWRENCE A. GENOVESI, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| KEVIN DENHA, Individually and On behalf of all others similarly situated, | ) |
| | ) Civil Action 1:04 cv 10228 JLT |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NETWORK ENGINES, INC., JOHN CURTIS, DOUGLAS G. BRYANT and LAWRENCE A. GENOVESI, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| WING KAM YU, on behalf of himself and all others similarly situated, | ) |
| | ) Civil Action 1:04 cv 10238 JLT |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NETWORK ENGINES, JOHN CURTIS and DOUGLAS G. BRYANT, | ) |
| | ) |
| Defendants. | ) |

HERBERT A. REITZEL, on behalf of himself and others )
similarly situated,                                  )   Civil Action 1:04 cv 10288 JLT
                                                     )
                        Plaintiff,                   )
                                                     )
        v.                                           )
                                                     )
NETWORK ENGINES, INC., JOHN CURTIS,                  )
DOUGLAS G. BRYANT and LAWRENCE A.                    )
GENOVESI,                                            )
                                                     )
                        Defendants.                  )

## PRELIMINARY STATEMENT

Presently pending before this Court are six-related securities class action lawsuits (the "Actions") brought on behalf of all those who purchased or otherwise acquired Network Engines, Inc. ("Network Engines" or the "Company") shares between November 6, 2003 and December 10, 2003, inclusive (the "Class Period") and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. § 78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Class Members Sergio and Ricardo Guerrera, Donald Drew and Thomas W. Jackson (the "Guerrera Group") hereby move this Court for an order to: (i) consolidate the Actions; (ii) appoint the Guerrera Group as Lead Plaintiff in the Actions under Section 21D(a)(3)(B) of the Exchange Act; and (iii) approve the Guerrera Group's selection of the law firm of Cauley Geller Bowman & Rudman, LLP ("Cauley Geller") to serve as Lead Counsel and the law firm of Shapiro, Haber & Urmy ("Shapiro Haber ") to serve as Liaison Counsel.

This motion is made on the grounds that the Guerrera Group is the most adequate plaintiff, as defined by the PSLRA. The Guerrera Group collectively suffered losses of $152,899.28 in connection with its purchases of shares of Network Engines stock during the Class Period.[1] See Hess-Mahan Decl. Ex. B.[2]  In addition, the Guerrera Group, for the purposes

---

[1]     The losses suffered by the Guerrera Group are not the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The approximate losses can, however, be determined from the certifications required under Section 21D of the Exchange Act and based upon reference to information concerning the current market for the Company's securities. The Guerrera Group's transactions in Network Engines shares are set forth in the accompanying loss chart.

[2]     References to the "Hess-Mahan Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of Theodore M. Hess-Mahan dated February 17, 2003 and submitted

of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil

Procedure in that its claims are typical of the claims of the putative class and that it will fairly

and adequately represent the interests of the class.

## **FACTUAL BACKGROUND** [3]

Network Engines, Inc. develops, manufactures and distributes server appliances that

enable network equipment providers and independent software vendors to deliver data storage

and security networking applications to their customers. The Company is focused on providing

its strategic partners with server appliance hardware, integration services and appliance

development, manufacturing, fulfillment, distribution and post-sale support to allow these

strategic partners to deliver turnkey solutions to their end user customers.

The complaint alleges that by the start of the Class Period, defendants knew, but failed to

disclose, that Network Engines was in the process of renegotiating its distribution contract with

EMC, and that EMC was demanding price reductions, which, if agreed to, would negatively

impact the Company's future financial results.  Nevertheless, throughout the Class Period,

defendants issued positive statements highlighting the Company's strong financial performance,

continued growth and the success of its relationship with EMC, its largest customer.  Defendants

failed to disclose, however: (i) that the Company was in the process of renegotiating its

distribution contract with EMC; (ii) that EMC was demanding price concessions to bring its

agreement with Network Engines in line with the pricing that Network Engines was providing to

herewith.

---

[3]    These facts are drawn from the allegations in the complaint captioned Timothy
Morgan v. Network Engines, Inc., et al., 1:03cv12529 (JLT) (the "Morgan Action").

other customers; (iii) that the new distribution contract with EMC would negatively impact the

Company's future financial performance; (iv) that the Company would not be able to sustain the

growth in its gross margins as a result of the amended contract; and (v) as a result, the Company's

positive statements issued during the Class Period were materially false and misleading when

made.

Finally, on December 10, 2003, the Company announced, among other things, that it had

renegotiated its distribution contract with EMC and the amended contract would negatively

impact the Company's gross profit related to the sale of EMC-approved Host Bus Adapters and

the Company's distribution operations gross profit.

Following this announcement, shares of Network Engines common stock fell $3.92 per

share, or 39%,  to close at $6.10 per share, on extraordinarily high trading volume, and have

continued to decline since that time.

### ARGUMENT

### POINT I

### THE ACTIONS SHOULD BE
### CONSOLIDATED FOR ALL PURPOSES

The Actions each assert class claims on behalf of the purchasers of Network Engines

shares for alleged violations of the Exchange Act during the relevant time period.  The Actions

name virtually the same defendants and involve the same factual and legal issues.  They are each

brought by investors who purchased Network Engines shares during the relevant time period in

reliance on the integrity of the market for such securities and were injured by the fraud on the

market that was perpetrated through the issuance of materially false and misleading statements

3

and concealment of material information, thus artificially inflating the prices of Network Engines

common stock at all relevant times.  Consolidation is appropriate where there are actions

involving common questions of law or fact.  Fed. R. Civ. P. 42 (a).  See Johnson v. Celotex

Corp., 899 F.2d 1281, 1284 (3d Cir.) (1990).  That test is met here and, accordingly, the Actions

should be consolidated.

**POINT II**

**THE GUERRERA GROUP SHOULD
BE APPOINTED LEAD PLAINTIFF**

**A.      The Procedure Required By The PSLRA**

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff

in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff

class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C.  § 78u-4(a)(1) and

(a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20

days of filing the action, informing class members of their right to file a motion for appointment

as Lead Plaintiff. 15 U.S.C. §§  78u-4(a)(3)(A)(i).  Plaintiff in the Morgan action caused the first

notice regarding the pendency of these actions to be published on PR Newswire, a national,

business-oriented newswire service, on December 16, 2003.  See Hess-Mahan Decl. Ex. A.

Within 60 days after publication of the notice, any person or group of persons who are members

of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not

they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the

4

Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the

member or members of the class that the Court determines to be most capable of adequately

representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B).  In determining the

"most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate
> plaintiff in any private action arising under this Act is the person or
> group of persons that
>
>> (aa) has either filed the complaint or made a motion
>> in response to a notice...
>>
>> (bb) in the determination of the court, has the
>> largest financial interest in the relief sought by the
>> class; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23
>> of the Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii). See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D.

Mass. 1996).

**B.    The Guerrera Group Satisfies the "Lead Plaintiff"
        Requirements Of The Exchange Act**

**1.    The Guerrera Group Has Complied With The
        Exchange Act And Should Be Appointed Lead Plaintiff**

The time period in which class members may move to be appointed Lead Plaintiff herein

under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on February 17, 2003.  Pursuant to the

provisions of the PSLRA and within the requisite time frame after publication of the required

notice (published on December 16, 2003), the Guerrera Group timely moves this Court to be

appointed Lead Plaintiff on behalf of all members of the class.

The members of the Guerrera Group have duly signed and filed certifications stating that

they are willing to serve as representative parties on behalf of the class.  See Hess-Mahan Decl.

Ex. C.  In addition, the Guerrera Group has selected and retained competent counsel to represent

them and the class. See Hess-Mahan Decl. Exs. D-E.  Accordingly, the Guerrera Group has

satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have its

application for appointment as Lead Plaintiff and selection of Lead and Liaison Counsel as set

forth herein, considered and approved by the Court.

**2.      The Guerrera Group Has The Requisite Financial
Interest In The Relief Sought By The Class**

During the Class Period, as evidenced by, among other things, the accompanying signed

certifications, see Hess-Mahan Decl. Ex. C., the Guerrera Group purchased shares of Network

Engines stock in reliance upon the materially false and misleading statements issued by the

defendants and was injured thereby.  In addition, the Guerrera Group collectively incurred a

substantial $152,899.28 loss on its transactions in Network Engines shares.  The Guerrera Group

thus has a significant financial interest in this case.  Therefore, the Guerrera Group satisfies all of

the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be

appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

**3.      The Guerrera Group Otherwise Satisfies Rule 23**

According to 15 U.S.C.  § 78u-4(a)(3)(B), in addition to possessing the largest financial

interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the

requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a

party may serve as a class representative only if the following four requirements are satisfied: (1)

the class is so numerous that joinder of all members is impracticable; (2) there are questions of

law or fact common to the class; (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- -

directly address the personal characteristics of the class representative.  Consequently, in

deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality

and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until

the Lead Plaintiff moves for class certification. Lax v. First Merchants Acceptance Corp., 1997

U.S. Dist. LEXIS 11866 at *20, (N.D. Ill. Aug. 6, 1997); Fischler v. Amsouth Bancorporation,

No. 96-1567-Civ -T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997).  The

Guerrera Group satisfies both the typicality and adequacy requirements of Rule 23, thereby

justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical

of those of the class.  Typicality exists where the plaintiffs' claims arise from the same series of

events and are based on the same legal theories as the claims of all the class members. See

Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986).  Typicality does not require

that there be no factual differences between the class representatives and the class members

because it is the generalized nature of the claims asserted which determines whether the class

representatives are typical. See Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988)

("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity

between their claims and those of absent class members, but need only show that their claims

arise from the same course of conduct that gave rise to the claims of the absent [class] members")

7

(citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. Phillips v. Joint Legislative Comm. on Performance & Expenditure Review, 637 F.2d 1014, 1024 (5th Cir. 1981).

The Guerrera Group satisfies this requirement because, just like all other class members, it: (1) purchased Network Engines shares during the Class Period; (2) purchased Network Engines shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, the Guerrera Group's claim is typical of those of other class members since its claim and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the Guerrera Group to represent the class to the existence of any conflicts between the interests of the Guerrera Group and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (lst Cir. 1985)).

Here, the Guerrera Group is an adequate representative of the class. As evidenced by the injuries suffered by the Guerrera Group, who purchased Network Engines shares at prices

allegedly artificially inflated by defendants' materially false and misleading statements, the

interest of the Guerrera Group is clearly aligned with the members of the class, and there is no

evidence of any antagonism between the Guerrera Group's interest and those of the other

members of the class.  Further, the members of the Guerrera Group have taken significant steps

which demonstrate that they will protect the interests of the class: they have retained competent

and experienced counsel to prosecute these claims.  In addition, as shown below, the Guerrera

Group's proposed Lead and Liaison Counsel are highly qualified, experienced and able to

conduct this complex litigation in a professional manner.  Thus, the Guerrera Group <u>prima</u> <u>facie</u>

satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of

this motion.

**POINT III**

**<u>THE COURT SHOULD APPROVE</u>**
**<u>THE GUERRERA GROUP'S CHOICE OF COUNSEL</u>**

Pursuant to 15 U.S.C.  § 78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to

Court approval, select and retain counsel to represent the class he seeks to represent. In that

regard, the Guerrera Group has selected the law firm of Cauley Geller as Lead Counsel and the

law firm of Shapiro Haber as Liaison Counsel, firms which have substantial experience in the

prosecution of shareholder and securities class actions.  <u>See</u> Hess-Mahan Decl. Exs. D-E.

Accordingly, the Court should approve the Guerrera Group's selection of counsel.

## CONCLUSION

For all the foregoing reasons, the Guerrera Group respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint the Guerrera Group as Lead Plaintiff in the Actions; (iii) approve its selection of Lead and Liaison Counsel as set forth herein; and (iv) grant such other relief as the court may deem just and proper.

DATED: February 17, 2003

Respectfully submitted,

**SHAPIRO, HABER & URMY LLP**

/s/Theodore M. Hess-Mahan
Theodore M. Hess-Mahan BBO #557109
75 State Street
Boston, MA 02109
Telephone:     (617) 439-3939

**Proposed Liaison Counsel**

**CAULEY GELLER BOWMAN
 & RUDMAN, LLP**
Samuel H. Rudman
David A. Rosenfeld
Mario Alba Jr.
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone:     (631) 367-7100
Facsimile:     (631) 367-1173

**Proposed Lead Counsel**

10