UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY MORGAN, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　　　　　vs.<br><br>NETWORK ENGINES, INC., JOHN CURTIS, DOUGLAS G. BRYANT, and LAWRENCE A. GENOVESI,<br><br>　　　　　　　　Defendants. | 1:03cv 12529 (JLT) |
| EDWIN POWELL MILLER, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　　　　　vs.<br><br>NETWORK ENGINES, INC., JOHN CURTIS, DOUGLAS G. BRYANT and LAWRENCE A. GENOVESI,<br><br>　　　　　　　　Defendants. | 1:04cv 10022 (JLT) |

(Additional Captions Set Forth Below)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO CONSOLIDATE, TO APPOINT WING KAM YU, BLAKE KUNKEL AND THOMAS CUNNINGHAMS AS LEAD PLAINTIFF, AND FOR APPROVAL OF THEIR SELECTION OF LEAD AND LIAISON COUNSEL AND IN RESPONSE TO THE <u>OTHER MOTIONS</u>**

- 2 -

| | |
|---|---|
| DAVID DUBROW, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>NETWORK ENGINES, INC.,<br><br>      Defendants. | : X<br>:<br>:  1:04cv 10096 (JLT)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: X |
| WING KAM YU, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>NETWORK ENGINES, INC., JOHN CURTIS, and DOUGLAS G. BRYANT,<br><br>      Defendants. | :<br>:<br>:  1:04cv 10238 (DPW)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: X |
| HERBERT A. REITZEL on behalf of himself and others similarly situated,<br><br>      Plaintiff,<br><br>      vs.<br><br>NETWORK ENGINES, INC., JOHN CURTIS, DOUGLAS G. BRYANT and LAWRENCE A. GENOVESI,<br><br>      Defendants. | :  1:04cv 10288 (JLT)<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: X |

  Wing Kam Yu, Blake Kunkel and Thomas Cunningham (the "Kunkel Group") respectfully submit this Memorandum of Law in further support of their motion to be appointed lead plaintiff in the above-referenced actions (2) to consolidate the actions presently pending in

the District of Massachusetts and (3) to approve its selection of Milberg Weiss Bershad Hynes & Lerach LLP as lead counsel and Moulton and Gans, PC, as liaison counsel, and in response to the other lead plaintiff motions.

## **INTRODUCTION**

Presently pending before the Court are motions for appointment of lead plaintiff and lead counsel from the following three movant groups:

(i)  The Kunkel Group;

(ii) Sergio and Ricardo Guerrera, Donald Drew and Thomas W. Jackson (the "Guerrera Group"); and

(iii) John O'Neil and Keith McPherson (the "O'Neil Group")

The Kunkel Group should be appointed Lead Plaintiff and the Court should approve their selection of Milberg Weiss as Lead Counsel and Moulton & Gans as Liaison Counsel because they have a substantial financial interest in this litigation ($17,904) and will best ensure that the class is adequately represented, as required by the PSLRA. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The motion of the O'Neill Group should be denied because it has not complied with the PSLRA's certification requirement by submitting a certification containing inaccurate trading information, causing its reported losses to be inflated. In addition the O'Neil Group does not demonstrate how it calculated its claimed financial interest and, accordingly, the Court cannot hold that it has the largest financial interest in the litigation. Given the Kunkel Group's financial interest in this litigation, its eagerness to undertake its lead plaintiff duties, and the vast experience and resources of its selected Lead Counsel, Milberg Weiss, the Court should exercise its discretion in the best interest of the class and appoint the Kunel Group as Lead Plaintiff and Milberg Weiss as Lead Counsel even if it determines that one of the other movants has demonstrated the greatest financial interest in the litigation.

## POINT I.

### THE O'NEIL GROUP HAS NOT DEMONSTRATED ITS FINANCIAL INTEREST IN THIS LITIGATION

Section 21D of the PSLRA provides that in securities class actions, "courts shall appoint as lead plaintiff(s) the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). In turn, "the most adequate plaintiff," is the movant with the "largest financial interest in the case that also meets the requirements of Fed. R. Civ. P. 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). Accordingly, "[i]n appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status. The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" In re Cendant Corp. Litig., 264 F.3d 201, 262 (3d Cir. 2001) (quoting 15 U.S.C. § 78u-4(a)(3)(B)). The PSLRA further requires that movants submit a certification that "sets forth of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(iv). As demonstrated below, the O'Neil Group fails to meet the PSLRA certification requirement and, in addition, does not demonstrate that it has the largest financial interest in the litigation because at least two fictitious trades are included in the calculation and because it does not explain how it calculated its financial interest.

The O'Neil Group fails to meet the certification requirement because half of transactions reported on Keith McPherson's certifications are outside the trading range of Network Engines' common stock on the days in question, which establishes that they could not have taken place. McPherson's certification references a purchase of 1,000 Network Engines shares on December 9, 2003 at $11.10 per share, and 2,000 shares on December 10, 2003 at $9.98 per share. See

Declaration of Christopher Keller at Ex. A. However, on December 9, 2003, the price of Network Engines common stock ranged from a low of $9.81 to a high of $10.45, while on December 10, 2003, the range was from $6 to $8.69 per share. See Exhibit A (attaching public trading information for Network Engines common stock). Accordingly, McPherson's referenced transactions are not possible and his certification, therefore, does not "set forth all of the transactions," as is required by the statute. See 15 U.S.C. § 78u-4(a)(2)(iv). In addition, the O'Neil Group's claimed financial interest of $87,927 is inaccurate and inflated because it includes McPherson's impossible December 9 and December 10 trades.

Moreover, the O'Neil Group does not explain how it calculated its financial interest. It concludes that its losses are $87,927, without showing how it arrived at that figure. See O'Neil Group Mem. at 7. This is highly relevant, as the assumptions and method used to arrive at a loss figure can be based on Last In First Out ("LIFO") or First In First Out ("FIFO") accounting of the purchases and sales, and the choice of which was used may have a dramatic impact on the reported financial interest. In addition, the certifications submitted by the O'Neil Group indicate that all of the shares purchased by McPherson were held through the end of the class period, but the O'Neil Group does not indicate how these unsold shares figured in the calculation. In In re Olsten Corp. Securities Litigation, 3 F. Supp. 2d 286 (E.D.N.Y. 1998), the court rejected the lead plaintiff motions of two movants who had not provided adequate information with respect to their financial interest in the action, reasoning as follows:

> Weichman, while she moves to be appointed as lead plaintiff of the consolidated action, offers no information with respect to the magnitude of her financial interest, other than stating that she obtained her 116 Olsten shares in exchange for her 200 Quantum shares. ***Even though Cannold argues that he has the largest financial interest in the outcome of the litigation, he does not present any facts to support this assertion.***

Id. At 295 (Emphasis added). See also In re Williams Securities Litigation, 02-CV-72-H(M) (N.D. Ok. Jul. 8, 2002) at * 10 (rejecting the motion of a movant who had not demonstrated its financial interest in the litigation and explaining that " ***Market Street's original certification and loss calculation, unlike those of other lead plaintiff movants, failed to provide sufficient information for the Court to analyze the basis for its claimed financial interest***") (Emphasis added). See Exhibit. B (attaching the opinion). The Court is in the same position here with respect to the O'Neil Group. In its moving papers, the Kunkel Group submitted a loss chart detailing exactly how their loss was calculated. See Ex. C to Declaration of Nancy Freeman Gans (submitted with the initial motion). The method used was FIFO and shares not sold at the end of the Class Period were valued at $4.9112, pursuant to the retention method.[1] Accordingly, because the O'Neil Group has not complied with the PSLRA's certification requirement, overstated its financial interest and otherwise failed to demonstrate that it has the largest financial interest in this litigation, as required by the PSLRA, its motion should be denied.

Although the Guerrera Group appears to possess a larger financial interest than the Kunkel Group, as discussed below, the Court should exercise its discretion and appoint the Kunkel Group as Lead Plaintiff and Milberg Weiss as Lead Counsel to ensure that the class is adequately represented.

---

[1] Under the retention method, which is the method used to calculate the greatest financial interest in the vast majority of courts, shares held as of the end of the class period are assigned a value equal to the mean trading price for the subject security in the 90 days following the corrective disclosure and this figure is then set-off (as if they were sales) against the purchases. See e.g. In re Microstrategy Inc. Sec. Litig., 110 F. Supp. 2d 427 (E.D. Va. 2000) (using 90-day period after the date of the corrective disclosure to determine the largest financial interest); Steiner v. Nat'l Auto Credit, 1998 U.S. Dist. LEXIS 21804, at *12 (N.D. Ohio July 16, 1998) "mean trading price... during the 90 day period" to calculate the largest financial interest in the case). See also 15 U.S.C. §78u-4(e)(I). In addition, FIFO is the preferred method of calculating losses [cases].

## POINT II

## THE CLASS WILL BE BEST REPRESENTED BY THE KUNKEL GROUP AND MILBERG WEISS

At the lead plaintiff stage of the litigation, the Rule 23 inquiry "focuses on ... typicality and adequacy". Lax v. First Merchants Acceptance Corp., 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997). Adequacy, requires that, among other things, "plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation.". In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (Saris, J.). Courts have the authority to handpick movants and counsel, that filed separate motions, to ensure that the class receives the best representation even if the selected lead plaintiffs/lead counsel filed separate motions. For example, in In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. 42 (S.D.N.Y. 1998), the court appointed an institutional investor and a group of individuals as lead plaintiffs and approved the selection of each movants' choice of lead counsel, even though the two sets of movants had filed separate motions, because doing so was in the best interest of the class:

> It should also be noted that the lead plaintiff movants are not in fact competing with each other. Each is seeking the same result-- the greatest recovery for the class consistent with the merits of the claims raised, the defenses asserted and the burdens and risks of litigation. ***The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions.*** Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, ensures that the interests of all class members will be adequately represented in the prosecution of the action and in the negotiation and approval of a fair settlement, and that the settlement process will not be distorted by the differing aims of differently situated claimants.

Id. at 49 (emphasis added). The appointment of the Kunkel Group, which has sustained substantial losses and is eager to undertake its lead plaintiff responsibilities, and approval of its selection Milberg Weiss as Lead Counsel will benefit the class substantially. Milberg Weiss, who is well known to this Court, is by far the largest plaintiffs' class action firm and is the only firm before the Court that employs the dozens of in-house investigators, forensic accountants and paralegals that are indispensable to the successful prosecution of these types of actions. In addition, because securities class actions lawyers are paid on contingency at the successful resolution of the case, which can take years, a firm's ability to fund a case, and to bear the risk of loss over time, is an important factor that is proportional to the firm's assets, ability to expand or contract its workforce, and funds from operations. For these reasons, the participation of Milberg Weiss as Lead or a Co-Lead Counsel will result in tangible benefits to the class. The participation of the Kunkel Group as lead plaintiff will also ensure that the Class is adequately represented and will make it more likely that a class will be certified. See In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. at 50 ( "[I]t is far less likely that any potential defenses would successfully rebut a finding of typicality where more than one investor or group of investors who made the decision to purchase the security is appointed as class representative."). Accordingly, the Court should appoint the Kunkel Group as Lead Plaintiff and Milberg Weiss as Lead Counsel even if it otherwise grants the motion of the Guerrera Group.

## CONCLUSION

For the foregoing reasons, Wing Kam Yu, Blake Kunkel and Thomas Cunningham satisfy the PSLRA's requirements for appointment as lead plaintiff in this action and should be appointed lead plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B). Movants respectfully requests that this Court: (1) appoint them as lead plaintiff pursuant to §21D(a)(3)(B); (2) consolidate the

actions presently pending in the District of Massachusetts and (3) approve its selection of Milberg Weiss as Lead Counsel and Moulton & Gans as Liaison Counsel.

DATED: March 2, 2004

Respectfully submitted,

**MOULTON & GANS, P.C.**

By: *Nancy Freeman Gans (auth)*
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA 02109
Telephone: (617) 369-7979

**Proposed Liaison Counsel**

**MILBERG WEISS BERSHAD HYNES & LERACH LLP**
Steven G. Schulman
Anita B. Kartalopoulos
Andrei V. Rado
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

**Proposed Lead Counsel**

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles Piven
The World Trade Center-Baltimore
Suite 2525
401 East Pratt Street
Baltimore, MD 21202
(410) 332-0030
Fax: 410-685-1300

**Attorney for Plaintiff**

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record, for each party by mail (by hand) on 3/2/04
*Nancy Freeman Gans (auth)*