UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MASSACHUSETTS

IN RE: NETWORK ENGINES, INC.
SECURITIES LITIGATION

Civil Action No. 03-12529-JLT

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

Jeffrey B. Rudman
Daniel W. Halston
John A. Litwinski
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts  02109
(617) 526-6000

Robin L. Alperstein (*pro hac vice*)
Wilmer Cutler Pickering Hale and Dorr LLP
300 Park Avenue
New York, New York  10022
 (212) 937-7200

Dated:  August 13, 2004

Table of Contents

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .............................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

ARGUMENT ...................................................................................................................4

I.      PLEADING REQUIREMENTS.................................................................................4

II.     PLAINTIFFS FAIL TO IDENTIFY ANY ACTIONABLE STATEMENT......................5

        A.      Defendants' Accurate Reports of Past Performance Are Not Actionable ...5
        B.      Defendants' Optimistic Statements About Future Performance Are
                Immaterial Corporate Puffery.................................................................7
        C.      The Forward-Looking Statements in the Press Release and Investor Call
                Are Not Actionable ................................................................................8

III.    THE ALLEGATIONS OF UNDISCLOSED "FACTS" SIMILARLY FAIL .................10

        A.      Plaintiffs Fail to Allege Particularized Facts Showing that Defendants
                Made False or Misleading Statements ......................................................10
                1.      Plaintiffs' Allegations Are Made on Information and Belief and
                        Lack the Requisite Particularity to Support a Claim of Fraud.......10
                        a.   The single document Plaintiffs identify does not show fraud..11
                        b.   The sole basis for Plaintiffs' claim that contract negotiations
                             existed is interviews with two anonymous sources based on
                             third-level hearsay that does not satisfy the PSLRA ...............11
                2.      The Former Employees' Statements Also Do Not Support the
                        Conclusion that Contract Negotiations Existed Prior to November
                        6, 2003 or that a 50% Price Increase was Certain as of November
                        6, 2003 .......................................................................................13
        B.      There Was No Duty to Disclose Incomplete Contract Negotiations .........14
        C.      The Statements Were Not Misleading Without the Undisclosed
                Information ............................................................................................16

IV.     PLAINTIFFS ALLEGE NO FACTS WHATSOEVER GIVING RISE TO A
        STRONG INFERENCE OF  FRAUDULENT INTENT ...................................................17

        A.      Plaintiffs' Attempt to Impute Knowledge to Curtis, Bryant, and Genovesi
                Based on Their Positions Fails to Raise a Strong Inference of Scienter....17
        B.      Plaintiffs' "Additional Scienter Allegations" Regarding Genovesi's Trades
                Do Not Support a Strong Inference of Fraudulent Intent .........................18

V.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 20(a)............................19

CONCLUSION................................................................................................................20

# TABLE OF AUTHORITIES

## *Federal Cases*

In re Ashworth Sec. Litig., Fed. Sec. L. Rep. (CCH) P91, 243
(S.D. Cal. Jul. 18, 2000)..................................................................................................... 7

Backman v. Polaroid Corp., 910 F.2d 10 (1st Cir. 1990) .................................................. 6, 15, 16

Baron v. Smith, 285 F. Supp. 2d 96 (D. Mass. 2003)........................................................ 17

In re Boston Tech. Inc. Sec. Litig., 8 F. Supp. 2d 43 (D. Mass. 1998).............................. 5, 8, 10 fn. 10, 16

Carney v. Cambridge Tech. Partners, Inc., 135 F. Supp. 2d 235
(D. Mass. 2001).................................................................................................................. 4 fn. 3, 7, 10-13, 20 fn. 20

In re Chipcom Corp. Sec. Litig., Civ. Act. No. 95-11114-DPW,
1996 U.S. Dist. LEXIS 22257 (D. Mass. Apr. 29, 1996) .................................................. 8, 12 fn. 12

Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42 (2d Cir. 1991)............................... 1 fn. 1

Evanowski v. Bankworcester Corp., 788 F. Supp. 611 (D. Mass. 1991) .......................... 15, 16

Fitzer v. Security Dynamics Techs., 119 F. Supp. 2d 12 (D. Mass. 2000)........................ 7 fn. 6, 8, 10, 11

In re Galileo Corp. Shareholders Litig., 127 F. Supp. 2d 251 (D. Mass. 2000)............. 18, 19

In re Gen. Instrument Corp. Sec. Litig., 2000 U.S. Dist. LEXIS 17078
(N.D. Ill. Nov. 21, 2000).................................................................................................... 8

Glassman v. Computervision Co., 90 F.3d 617 (1st Cir. 1996)......................................... 4 fn. 4, 14 fn. 15

Glazer v. Formica Corp., 964 F.2d 149 (2d Cir. 1992)..................................................... 16

Greebel v. FTP Software, Inc., 194 F.3d 185 (1st Cir. 1999)............................................ 4, 4 fn. 3, 7, 17, 19

Gross v. Summa Four, Inc., 93 F.3d 987 (1st Cir. 1996).................................................. 4, 15, 18

In re Humana Inc. Sec. Litig., 2000 U.S. Dist. LEXIS 21671
(W.D. Ky. Nov. 7, 2000) .................................................................................................... 16

In re Humana Inc. Sec. Litig., 42 Fed. Appx. 715, 2002 U.S. App. LEXIS 15710
(6th Cir. July 31, 2002)....................................................................................................... 16

Johnson v. Tellabs, Inc., 303 F. Supp. 2d 941 (N.D. Ill. 2004) ........................................ 8

In re Lernout & Hauspie Sec. Litig. v. Lernout, 286 B.R. 33 (D. Mass. 2002).................. 1 fn. 1

Lirette v. Shiva Corp., 27 F. Supp. 2d 268 (D. Mass. 1998) ............................................. 13, 19

Maldonado v. Dominguez, 137 F.3d 1 (1st Cir. 1998)...................................................... 4, 5

Number Nine Visual Tech. Corp. Sec. Litig., 51 F. Supp. 2d 1 (D. Mass. 1999) ............. 8

In re Peritus Software Servs., Inc. Sec. Litig., 52 F. Supp. 2d 211 (D. Mass. 1999)......... 4 fn. 4, 8, 18, 19, 20

Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357 (1st Cir. 1994)............................ 5, 6, 16

Suna v. Bailey Corp., 107 F.3d 64 (1st Cir. 1997) ........................................................... 4 fn. 3, 7, 20

Van Ormer v. Aspen Tech., Inc., 145 F. Supp. 2d 101 (D. Mass. 2000)........................... 4 fn. 3, 11, 12

Watterson v. Page, 987 F.2d 1 (1st Cir. 1993)................................................................ 1 fn. 1

Wietschner v. Monterey Pasta Co., 294 F. Supp. 2d 1102 (N.D. Cal. 2003)............... 20

## *Federal Statutes*

15 U.S.C. §§ 78j(b), 78t(a) ............................................................................................ 4

15 U.S.C. §§ 78u-5(c),(i) .............................................................................................. 9

## *Federal Regulations*

17 C.F.R. § 240.10b-5................................................................................................... 4

BOSTON 1971906v1

## **INTRODUCTION**

On December 10, 2003, Network Engines, Inc. ("Network Engines," "the Company," or "NENG") announced that it and its largest customer, EMC Corporation ("EMC"), had renegotiated a contract between EMC and Network Engines' recently acquired subsidiary, TidalWire Inc. ("TidalWire"). TidalWire had previously sold host bus adaptors (HBAs) for use with EMC products to EMC's customers without having to pay a fee to EMC for the referrals, enabling Network Engines to enjoy high profit margins on HBA sales. The renegotiated EMC contract introduced a royalty to be paid by TidalWire for each EMC-referred HBA sale, resulting in higher costs to TidalWire (and hence lower profit margins) for HBA sales. Plaintiffs filed this lawsuit on the heels of Network Engines' announcement.

This lawsuit is a textbook example of the type of case that the First Circuit has routinely dismissed – and why Congress enacted the Private Securities Litigation Reform Act (PSLRA). Predicated upon statements that are per se not actionable because they are indisputably true, or simple puffery, or protected by the PSLRA's safe harbor; lacking in allegations of falsity that could give rise to any duty to disclose; and based on information and belief and third-level hearsay, the Amended Consolidated Complaint fails to allege any specific or particularized facts that could rise to a strong inference of fraudulent intent on the part of any Defendant. Plaintiffs' failure to meet the standards under Rule 12(b)(6), much less the heightened pleading requirements under Rule 9(b) and the PSLRA as applied in this Circuit, requires dismissal of their claims with prejudice.

## **FACTUAL BACKGROUND**

### A.    **Network Engines**

Network Engines is a development, manufacturing, and distribution partner for storage and security software and network equipment providers. See Amended Consolidated Complaint ("Compl.") ¶ 7; see also Declaration of John A. Litwinski ("Litwinski Decl.") Ex. 1 at 1.[1]

---

[1] The Court may take judicial notice of SEC filings when considering a motion to dismiss. See In re Lernout & Hauspie Sec. Litig. v. Lernout, 286 B.R. 33, 37 (D. Mass. 2002) (citing Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47 (2d Cir. 1991)); see also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Network Engines operates two separate lines of business: the original equipment manufacturer (OEM) Appliance Business, and the Distribution Business. See Litwinski Decl. Ex. 2 at 6. The OEM Appliance Business and the Distribution Business have "unrelated and mutually exclusive" relationships with EMC. Id. Ex. 3 at 35. On December 27, 2002, Network Engines created its Distribution Business by acquiring TidalWire and TidalWire's HBA distribution contract with EMC (the "Contract"). See id. Ex. 4 at 25. On December 10, 2003, TidalWire and EMC amended the Contract to require TidalWire to pay EMC a royalty for every EMC-referred HBA sale. See id. at exhibit 10.26, Amendment No. 2. Network Engines announced the amendment to the Contract that same day. See id. Ex. 5 at 1; Compl. ¶ 37.

### B.   Summary of Plaintiffs' Allegations

Plaintiffs allege that in 2002 Defendants were renegotiating Network Engines' distribution contract with EMC, and that as part of that extended renegotiation, EMC in "October or November 2003" demanded a "steep price increase" of as much as 50%. (Compl. ¶¶ 25-26.) Plaintiffs allege, albeit without any particularized facts (as discussed below), that Defendants knew on November 6, 2003 (the date Network Engines announced its earnings and held an investor conference call) that the steep price increase would "have a significant negative impact on the Company's financial performance." (Id. ¶¶ 28, 31, 34.) Plaintiffs claim that in making public statements regarding Network Engines' financial results for fiscal Q4 and fiscal year 2003, Defendants breached a duty to disclose the status of the allegedly ongoing contract renegotiations because by omitting that information, Defendants were "overstating the financial strength and condition of TidalWire." (Id. ¶¶ 28, 31, 34.)

In particular, Plaintiffs contend that five public statements on November 6, 2003 consisting of positive comments regarding Network Engines' past financial results and future prospects were materially false and misleading because the alleged fact that Network Engines and EMC were in contract negotiations that would result in a "dramatic price increase" was not disclosed. (Id. ¶¶ 27-36.) Plaintiffs do not appear to allege that any Defendant misrepresented Network Engines' financial results or that any statement made was itself affirmatively false, but

2

rather appear to contend that Defendants' nondisclosure of the alleged contract negotiations with EMC rendered the statements misleading. (Id. ¶¶ 29, 32, 34, 36.)

Plaintiffs identify the following five statements as materially false or misleading without the undisclosed information:

- The Company's November 6, 2003 press release, in which Defendant Curtis is quoted as stating, "The results for our fiscal year 2003 reflect a dramatic turnaround for Network Engines. Our results reflect the continuing success of our business strategy" and, regarding the OEM Appliance Business, that "the Company continued to develop its relationships with its new partners and strengthen relationships with existing partners" and finally that "we are seeing *increasing acceptance* of our unique value proposition by our customers and software partners" and "[w]e recently announced new application partners … that we will work with" (the "press release") (Compl. ¶ 27) (emphasis added);

- Defendant Curtis's statements on a November 6, 2003 investor call that "we believe that we have positioned the company to address the growing demand for network appliance solutions" and that "we are optimistic that in coming quarters, there will be more opportunities to partner with existing and newly signed software companies" ("Curtis's Optimistic Statements") (id. ¶ 30);

- Curtis's characterization on the same call of Network Engines' acquisition of TidalWire as "a core success for our company. In our Q4, we benefited from the surge in demand for storage networking products distributed by … TidalWire" ("Curtis's Past Performance Statement") (id. ¶ 30);

- Defendant Bryant's "positive statements about the Company's performance and future outlook" (including its gross margin performance) on that same November 6, 2003 investor call, including his statement that improvement in the Company's net loss "is directly related to the growth of our revenues which was driven by our acquisition of TidalWire" ("Bryant's Past Performance Statement") (id. ¶ 33); and

- Defendant Bryant's response to a question during the same November 6, 2003 investor call about Network Engines' OEM Appliance Business, not its Distribution Business, regarding how much of the decrease in the Company's revenue from its largest OEM customer was attributable to the "consignment issue," in which Bryant stated "we ship it when they ask for it … other than that, … you have to talk to our partner." ("Bryant's Response") (id. ¶ 35.)

The only purpose Plaintiffs allege for Defendants' alleged fraud was to allow Defendant Genovesi to sell 75,000 shares of NENG stock at an allegedly inflated price. (Id. ¶ 14.) [2]

---

[2] Plaintiffs do not allege that Defendant Genovesi made any actionable statements. The sole statement alleged in the Complaint that is arguably attributable to Genovesi is the press release.

**ARGUMENT**

## I.    PLEADING REQUIREMENTS

The First Circuit employs rigorous pleading requirements for plaintiffs alleging securities fraud. See Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir. 1999) ("This Circuit has been notably strict and rigorous in applying the Rule 9(b) standard in securities fraud actions.") (citing Maldonado v. Dominguez, 137 F.3d 1, 9 (1st Cir. 1998)).[3]

To state a claim under Sections 10(b) or 20(a) of Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), or Rule 10b-5 (17 C.F.R. § 240.10b-5), Plaintiffs must plead that each Defendant: (1) made a false statement or a statement made misleading by omission of material fact, (2) with scienter (fraudulent intent), and that (3) Plaintiffs relied on this statement (4) with resultant injury to Plaintiffs. See Gross v. Summa Four, Inc., 93 F.3d 987, 992 (1st Cir. 1996) (emphasis added). Failure to satisfy any one of these elements requires dismissal of Plaintiffs' claim.[4]

The PSLRA additionally requires Plaintiffs to state facts that give rise to a ***strong inference*** of Defendants' fraudulent intent. See Greebel, 194 F.3d at 195-96 ("[I]nferences of scienter survive a motion to dismiss only if they are both reasonable and 'strong inferences.'"). General averments of knowledge are insufficient. See Maldonado, 137 F.3d at 9.

The Amended Consolidated Complaint does not plead the requisite elements of a Rule 10b-5 claim. Plaintiffs fail to allege a fraudulent misrepresentation, fail to state the circumstances of the alleged fraud with particularity, fail to allege facts establishing a duty to disclose, and fail to allege facts giving rise to a strong inference of scienter. Each of these failures provides independent ground for dismissing Plaintiffs' 10b-5 claim. Together, they

---

[3] Federal Rule of Civil Procedure 9(b) and the PSLRA both further require that the "circumstances constituting fraud … be stated with particularity." This means Plaintiffs must: (i) specify the statements that Plaintiffs contend were fraudulent; (ii) identify the speaker; (iii) state when and where the statements were made; and (iv) explain why the statements were fraudulent. See Suna v. Bailey Corp., 107 F.3d 64, 68 (1st Cir. 1997); see also Van Ormer v. Aspen Tech., Inc., 145 F. Supp. 2d 101, 103-04 (D. Mass. 2000). Allegations pleaded on information and belief, like those of Plaintiffs here, must be accompanied by "all facts" underlying that belief, including the source of the information and the reasons for the belief. Greebel, 194 F.3d at 193; Carney v. Cambridge Tech. Partners, Inc., 135 F. Supp. 2d 235, 247 (D. Mass. 2001).

[4] Under Federal Rule Civil of Procedure 12(b)(6), only the *well-pleaded* facts contained in a complaint must be presumed true. See In re Peritus Software Servs., Inc. Sec. Litig., 52 F. Supp. 2d 211, 218 (D. Mass. 1999). Bald assertions lacking specific supporting allegations must be ignored, and legal conclusions and inferences not logically drawn from well-pleaded facts are accorded no deference. See Glassman v. Computervision Co., 90 F.3d 617, 628 (1st Cir. 1996) (citation omitted).

establish that Plaintiffs' lawsuit is precisely the type of baseless strike suit that the PSLRA was enacted to curb. Dismissal with prejudice is therefore not only appropriate, it is required.

## II.    PLAINTIFFS FAIL TO IDENTIFY ANY ACTIONABLE STATEMENT

Defendants' statements cannot support a claim for fraud. Each statement is either immaterial as a matter of law because it was "[an] undisputably true representation[] of the company's circumstances," corporate puffery, or a forward looking statement protected under the Safe Harbor provision of the PSLRA. Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 361 (1st Cir. 1994). Moreover, the statements that Plaintiffs contend are misleading do not even refer to the TidalWire-EMC relationship, much less to the terms of the Contract.

### A.    Defendants' Accurate Reports of Past Performance Are Not Actionable

Plaintiffs' failure to allege that Network Engines' financial results discussed in the November 6, 2003 press release and investor call were incorrect renders Defendants' Past Performance Statements not actionable. "Accurate reports of past success are not actionable." In re Boston Tech. Inc. Sec. Litig., 8 F. Supp. 2d 43, 60 (D. Mass. 1998); see also Serabian, 24 F.3d at 361 ("[U]ndisputably true representations of the company's circumstances" are not actionable). Nor does the alleged fact of a supposed looming price increase change this result. This Circuit has rejected the argument that accurate reports of past success are misleading if current circumstances have changed. See Serabian, 24 F.3d at 361 ("[d]efendants may not be held liable under the securities laws for accurate reports of past successes, even if present circumstances are less rosy.")

Like Plaintiffs here, the plaintiffs in Serabian alleged fraud based on financial reports that the plaintiffs contended were "misleadingly positive." Serabian, 24 F.3d at 363; compare Compl. ¶¶ 28, 34. The Court found that there was "nothing actionable in these statements, which simply report the company's reduced earnings and one of the reasons for it." Serabian, 24 F.3d at 362. As in Serabian, Defendants in the press release simply reported on the Company's financial results, and provided reasons for those results. (See Compl. ¶¶ 27, 33.) Those results were no less true or accurate because of the alleged existence of contract negotiations that might

change the Company's outlook for the future. <u>See</u> <u>Serabian</u>, 24 F.3d at 361; <u>Backman v.</u> <u>Polaroid Corp.</u>, 910 F.2d 10, 17 (1st Cir. 1990).[5]

Curtis' statement in the press release that the Company continued to strengthen relationships with *existing* customers is precisely correct. That statement is set forth in the "OEM Appliance Achievements" section of the press release, not the "Distribution Operations Achievements" section, and therefore did not concern the Company's relationship with EMC under the contract acquired from TidalWire. <u>See</u> Litwinski Decl. Ex. 1 at 1. Indeed, the contract amended on December 10, 2003 is part of the Company's Distribution Business and is *totally unrelated* to the Company's OEM Appliance Business. <u>See</u> discussion <u>supra</u> at pp. 1-2. Plaintiffs do not challenge the accuracy of any statements concerning the OEM Appliance business, and cannot convert a true statement into a false one by cherrypicking the true language about one aspect of the Company's business and attributing it to another.

Bryant's Past Performance Statements – reciting the Company's gross margins and discussing the contribution of the Distribution Business to gross margins – and Bryant's Response on the November 6th investor call (to a question about the OEM Appliance Business) likewise simply reported the Company's past results. Plaintiffs do not contend that the results themselves were false, that Bryant's explanation of those results was incorrect, or that the Company did not "ship it when they ask for it." (<u>See</u> Compl. ¶¶ 28-29, 31, 34.) The accuracy of Bryant's explanation of the reason for the Company's improved margins – revenue growth driven by the TidalWire acquisition – is also unchallenged by Plaintiffs. (<u>See id.</u> ¶ 34.) Plaintiffs' failure to allege that these results or Bryant's Response were in any way inaccurate renders Bryant's Past Performance Statements and Response similarly not actionable.

Curtis's Past Performance Statement is also not actionable. Plaintiffs do not allege that the Company did *not* benefit in the Fourth Quarter from increased demand for storage networking products. Those results were true regardless of whether, going forward, demand

---

[5] Plaintiffs fail, in any event, to allege facts supporting the conclusion that the Company was in contract negotiations on November 6, 2003. <u>See</u> discussion <u>infra</u> Section III.A.2.

6

would change. See Suna v. Bailey Corp., 107 F.3d 64, 70 (1st Cir. 1997). Accordingly, Curtis's

Past Performance Statement cannot support a claim for fraud.

### B.    Defendants' Optimistic Statements About Performance Are Immaterial Corporate Puffery

Courts in the First Circuit have generally declined to impose liability for broad statements

that express optimism about a company's future because such statements are unlikely, as a

matter of law, to be material to a reasonable investor. See Greebel, 194 F.3d at 207 ("upbeat

statements of optimism and puffing ... are not actionable"); Carney, 135 F. Supp. 2d at 245.

Each of the optimistic statements in the November 6th press release or investor call that

Plaintiffs characterize as misleading is the precise sort of puffery that courts routinely reject as

immaterial:

- Curtis's statement in the press release that "the results for our fiscal year 2003 reflect a *dramatic turnaround* for Network Engines" (Compl. ¶ 29, emphasis added) is puffery. See In re Ashworth Sec. Litig., Fed. Sec. L. Rep. (CCH) P91, 243 (S.D. Cal. Jul. 18, 2000) ("statements of optimism regarding [Company's]... *turnaround*, or its prospects are not actionable because they are generic statements and 'puffery'") (citation omitted) (emphasis added);

- Curtis's statements in the press release that "[o]ur results reflect the *continuing success* of our business strategy" and "we are seeing *increasing acceptance* of our unique value proposition by our customers and software partners" (Compl. ¶ 27, emphasis added) are puffery. See Johnson v. Tellabs, Inc., 303 F. Supp. 2d 941, 955 (N.D. Ill. 2004) ("statements of puffery, such as *general predictions of success* are not actionable") (citation omitted) (emphasis added); In re Gen. Instrument Corp. Secs. Litig., 2000 U.S. Dist. LEXIS 17078, at *13 (N.D. Ill. Nov. 21, 2000) (statement that "customers showed '*strong acceptance*' of the [company's] product is nothing more than vague 'puffery'.") (emphasis added);

- The press release statement that "[a]dditionally, the Company continued to *develop its relationships with new partners and strengthen relationships with existing partners*" and Curtis's statement in the press release that "[w]e recently announced new application partners ... that we will work with" (Compl. ¶ 27, emphasis added) are, at most, "harmless and standard corporate hyperbole." Number Nine Visual Tech. Corp. Sec. Litig., 51 F. Supp. 2d 1, 20 (D. Mass. 1999); In re Chipcom Corp. Sec. Litig., 1996 U.S. Dist. LEXIS 22257, at *40 (D. Mass. Apr. 29, 1996) (statement that multiyear extension "*strengthens* our already strong alliance with" other company "is mere puffery") (emphasis added);[6]

---

[6] See also Fitzer v. Security Dynamics Techs., 119 F. Supp. 2d 12, 23 (D. Mass. 2000) (the "corporate puffery rule applies to loose optimism about both a company's current state of affairs and its *future prospects*," and renders not actionable "*subjective characterizations*" as well as "*harmless and standard hyperbole*") (emphasis added). The

- Curtis' Optimistic Statement on the November 6, 2003 investor call that the Company is "*positioned ... to address growing demand*," and that "we are *optimistic* that ... there will be more *opportunities* to partner with existing and the newly signed software companies" (Compl. ¶ 30, emphasis added)) are puffery. Tellabs, Inc., 303 F. Supp. 2d at 955 ("general *predictions of success* are not actionable") (emphasis added); see also Fitzer v. Security Dynamics Techs., 119 F. Supp. 2d 12, 23 (D. Mass. 2000) (statement that company was "*well positioned*" was inactionable puffing) (emphasis added); and

- Curtis' Past Performance Statement that the "acquisition of TidalWire [is] a core *success*," that the Company "*benefited* from the *surge in demand* for ... product distributed by our TidalWire distribution operation," is puffery. See In re Peritus Software Servs., Inc. Sec. Litig., 52 F. Supp.2d 211, 220 (D. Mass. 1999) (company's "'*unprecedented market demand*' statement, placed in context, represents precisely the type of rosy affirmation which the First Circuit has held to be mere corporate puffery") (emphasis added); id. at 226 (characterization of merger as "*success*" not actionable) (emphasis added).

These are precisely the type of "exaggerated, vague, or loosely optimistic statements about a company [that] are not actionable under Rule 10b-5." In re Boston Tech., 8 F. Supp. 2d at 54.

### C.    The Forward-Looking Statements in the Press Release and Investor Call Are Not Actionable

Even if the November 6th press release and investor call statements were somehow material, they would still be non-actionable as forward-looking statements protected under the "safe harbor" provision of the PSLRA. See 15 U.S.C. §§ 78u-5(c),(i). The press release was identified as forward-looking and accompanied by meaningful cautionary language:

> Statements in this press release regarding Network Engines' future financial performance including statements regarding future revenue, gross profit, operating expenses, net income and cash position, and any other statements about Network Engines' management's future expectations, beliefs, goals, plans or prospects constitute *forward-looking statements* within the meaning of the Private Securities Litigation Reform Act of 1995.

---

first statement noted above is, moreover, cherry-picked from the portion of the press release reporting exclusively on Network Engines' *OEM Appliance Business* results, and therefore has nothing to do with the Distribution Business or the Contract between EMC and TidalWire. See Litwinski Decl. Ex. 1 at 1. Plaintiffs do not allege any issues concerning the OEM Appliance Business.

8