UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re NETWORK ENGINES INC. SECURITIES LITIGATION | ) ) ) ) ) | CA NO. 03-12529-JLT |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR ENTRY OF PRELIMINARY ORDER OF APPROVAL OF CLASS ACTION SETTLEMENT**

Lead Plaintiffs, pursuant to Fed. R. Civ. P. 23(e), move this Court for preliminary approval of the proposed settlement (the "Settlement"); to certify the proposed class for settlement purposes; and to establish a schedule for giving notice to the members of the Class,[1] allowing Class Members an opportunity to object or to exclude themselves from the Class, holding a hearing to consider final approval of the Settlement, and requiring Class Members to submit Proof of Claim forms by a fixed deadline.

**I.   INTRODUCTION**

Lead Plaintiffs submit this application for preliminary approval of the proposed Settlement in this securities class action brought on behalf of all Persons who purchased or otherwise acquired the common stock of Network Engines, Inc. between November 6, 2003 and December 10, 2003, inclusive. The Stipulation and Agreement of Settlement, dated as of March 29, 2006 (the "Settlement Stipulation"), provides for the settlement of all class claims asserted against Network Engines, Inc. ("Network Engines" or the "Company"), John Curtis, Douglas Bryant, and Lawrence Genovesi (the "Defendants"). The Settlement Stipulation is being filed contemporaneously herewith.

---

[1] Unless otherwise noted, capitalized terms used herein are defined in The Stipulation and Agreement of Settlement, dated March 29, 2006, being filed contemporaneously herewith.

Under the terms of the Settlement Stipulation, on or before March 31, 2006, the Defendants will pay $2,875,000 into escrow for the benefit of Plaintiffs and the Class. This amount shall include payment for (i) Notice and Administration costs; and (ii) any award of attorneys' fees and reimbursement of litigation expenses.

Lead Plaintiffs ask this Court to enter the Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings (Exhibit A to the Settlement Stipulation) (the "Preliminary Order"): (1) granting preliminary approval of the proposed Settlement; (2) certifying the Class for settlement purposes only; (3) directing that the Class be given notice of the proposed Settlement in the form and manner proposed by the parties; and (4) scheduling a hearing at which the Court will consider the parties' motion for final approval of the Settlement and entry of their proposed final judgment, and Plaintiffs' Counsel's application for an award of attorneys' fees and reimbursement of costs. The proposed Preliminary Order is Exhibit A to the Settlement Stipulation and has been consented to by Lead Plaintiffs and the Defendants.

If the Court preliminarily approves the Settlement, Lead Plaintiffs propose the following schedule for the settlement proceedings:

- Mailing of individual copies of the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing (the "Settlement Notice") (Exhibit 1 to Exhibit A to the Settlement Stipulation) and a Proof of Claim form (Exhibit 2 to Exhibit A to the Settlement Stipulation) to potential Class Members: *Two weeks after entry of the Preliminary Order.*

- Publication of a Summary Settlement Notice (Exhibit 3 to Exhibit A to the Settlement Stipulation) in The Wall Street Journal: *Within ten days after mailing individual copies of the Settlement Notice.*

- Deadline for mailing requests for exclusion from the Class: *Sixty days after mailing of the individual copies of the Settlement Notice.*

- Deadline for filing and serving objections to the Settlement, the Plan of Allocation, or motion for an award of attorneys' fees and reimbursement of expenses: *Sixty days after mailing of the individual copies of the Settlement Notice.*

- Settlement Fairness Hearing: *At the Court's convenience on or after eighty-five days after mailing of the individual copies of the Settlement Notice (and at least twenty-one days after the deadline date for exclusions and objections).*

- Deadline for submission of Proof of Claim forms: *At least thirty days after the Settlement Fairness Hearing.*

For example, if the Court preliminarily approves the Settlement and enters the Preliminary Order on or before Friday, April 7, 2006, the following dates could be inserted in the Preliminary Order in accordance with the above proposed schedule:

Mailing Deadline (Preliminary Order, Paragraph 8): April 21, 2006

Exclusion Deadline (Preliminary Order, Paragraph 12): June 19, 2006

Objection Deadline (Preliminary Order, Paragraph 14): June 19, 2006

Settlement Fairness Hearing (Preliminary Order, Paragraph 5): at the Court's convenience on or after July 17, 2006

Proof of Claim deadline (Preliminary Order, Paragraph 11(a)): August 18, 2006.

## II.    BACKGROUND

### A.    Procedural History

Beginning on or about December 17, 2003, eight class actions alleging violations of federal securities laws were filed in this Court, all of which were subsequently consolidated

3

under the above-captioned Action. By Order dated March 17, 2004, the Court appointed Wing Kam Yu, Blake Kunkel, and Thomas Cunningham as Lead Plaintiffs. The Court also approved the law firms of Milberg Weiss Bershad Hynes & Lerach LLP (now known as Milberg Weiss Bershad & Schulman LLP) as Lead Counsel for the Class and Moultan & Gans, P.C. as Liaison Counsel for the Class. Lead Plaintiffs subsequently filed an Amended Consolidated Complaint (the "Complaint") on June 4, 2004.

On August 13, 2004, Defendants moved to dismiss the Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. On October 12, 2004, Plaintiffs filed a memorandum of law in opposition to the Defendants' motion to dismiss. Defendants filed a reply memorandum in support of their motion on November 12, 2004. The Court denied Defendants' motion to dismiss by Order dated November 22, 2004. On December 23, 2004, Defendants served their Answer to the Complaint in which they denied all substantive allegation of wrongdoing and asserted a number of affirmative defenses.

### B.    Plaintiffs' Allegations

The Complaint alleges that the Defendants misled investors by failing to disclose materially adverse facts regarding the change in the relationship between Network Engines and its key strategic partner, EMC Corporation ("EMC"), and the negative impact the change would have on the Company's distribution business. The Complaint further alleges that the Defendants failed to disclose to the investing public that EMC had extracted changes to its distribution contract with Network Engines, including price increases and other concessions, all of which would substantially injure Network Engines' gross profit and operating margins. The Complaint alleges that investors purchased the common stock of Network Engines during the Class Period at prices artificially inflated as a result of the Defendant's failure to disclose the material adverse facts regarding the Company's relationship with EMC and its impact on the

4

Company's financial performance, in violation of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, and were damaged as a result thereof.

### C. Discovery

On February 1, 2005, Counsel for both parties met in person at the offices of Lead Counsel. At this meeting, Defendants agreed to provide informal discovery in an effort to facilitate a settlement. On June 10, 2005, as part of this informal discovery process, Defendants produced tens of thousands pages of pages of internal company documents and electronic data, including the e-mails of key Network Engines employees.

In addition to the foregoing informal discovery, the parties also served, and responded and objected to, formal discovery. On July 14, 2005, Defendants served document requests and interrogatories, and on July 28, 2005, Lead Plaintiffs did the same. On August 29, 2005, Lead Plaintiffs served their responses and objections to Defendants' requests and interrogatories, and produced responsive documents to Defendants. On September 13, 2005, Defendants did likewise, with the parties agreeing that Defendants' informal discovery would serve as their initial production of documents to Plaintiffs.

### D. The Mediation

Following Lead Plaintiffs' review of Defendants' substantial informal production, counsel for both sides participated in a series of conferences, including one in-person, on September 13, 2005, at the offices of Defendants' counsel in Boston. These meetings confirmed that the parties remained far apart in terms of their respective assessments of both the merits of Lead Plaintiffs' claims and the amount of damages suffered by Class Members. In an effort to determine if an early and fair resolution of the case were possible, the parties agreed to engage in mediation, and retained the Honorable Nicholas Politan, a retired federal judge, as a mediator. In

advance of the mediation session, the parties prepared confidential mediation statements for Judge Politan.

On October 12, 2005, counsel for Lead Plaintiffs, Defendants, and Defendants' insurer conducted a mediation before Judge Politan at the offices of Lead Counsel in New York. At this mediation, both sides presented their opposing views of the case. Finally, after intensive negotiation lasting the better part of a day, an agreement in principle was reached.

### III.    THE PROPOSED SETTLEMENT

Under the proposed settlement, the Defendants will pay $2,875,000 in cash into escrow for the benefit of the Class. (*See* Settlement Stipulation ¶ 4). If the Settlement is granted final approval, the $2,875,000 plus interest, less administration and notice costs, taxes and related expenses, and any award of attorneys' fees and costs to Plaintiffs' Counsel (the "Net Settlement Fund"), will be distributed among all Class Members who submit timely and valid proofs of claim ("Authorized Claimants"), pursuant to a Plan of Allocation.

The proposed Plan of Allocation (set forth in the Settlement Notice beginning at page 16) uses a Recognized Claim formula to determine for each claimant a claim amount based on the claimant's purchases, sales and holdings. That Recognized Claim will be used to proportionately allocate the Net Settlement Fund among all Authorized Claimants. Under the Plan of Allocation, an independent claims administrator, Rust Consulting, Inc., selected by Lead Counsel after a competitive bid process, will calculate each Authorized Claimant's "Recognized Claim," based on the information supplied with the claimant's Proof of Claim. The proposed Plan of Allocation allocates the Net Settlement Fund to Class Members based upon Lead Plaintiffs' estimate of the amount by which the market price of Network Engines' common stock was artificially inflated during the Class Period. Additionally, the proposed Plan of Allocation takes

6

into consideration the additional obstacles to recovery potentially faced by Class Members who sold their stock prior to the Defendants' corrective disclosures.

The Plan of Allocation is similar in structure to numerous other such plans which have been approved in securities class action cases. Lead Plaintiffs submit that the Plan of Allocation is fair and equitable to Class Members and deserves the Court's approval, but note that approval of the Plan of Allocation is not a condition of settlement. Under the Settlement Stipulation, the Net Settlement Fund may be distributed in accordance with the proposed Plan of Allocation, or any other such plan the Court may approve. (*See* Settlement Stipulation ¶¶ 10-11.)

In return for the above consideration, Defendants will receive a release of any and all "Settled Claims" (as defined in the Settlement Stipulation in paragraph ¶ 1(w)) which Class Members have or may have against the Defendants. Such release relates to the matters alleged in the Amended Consolidated Complaint and to the purchase, sale or acquisition of shares of Network Engines common stock as more fully defined in the Settlement Stipulation at ¶¶ 1(v)-(w).

## IV. THE SETTLEMENT MORE THAN MEETS THE STANDARD FOR PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Preliminary approval of a proposed settlement is the first step in a two-step process leading to the final settlement of a class action. *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "First, the judge reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing." *Manual for Complex Litigation* (Fourth) §13.14 (2004). "In some cases, this initial evaluation can be made on the basis of information already known, supplemented if necessary, by briefs, motions, or an informal presentation by parties." *Id.* at §21.632. Then, at

the Settlement Fairness Hearing, the Court undertakes a detailed assessment of the terms of the Settlement, the interests of the Class Members as well as any third parties who may be affected by the Settlement, and the circumstances of the litigation and proposed settlement. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1 (1st Cir. 1999); *Durett v. Housing Auth. of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).

Accordingly, at this stage of the settlement process, the Court conducts only a preliminary evaluation to determine whether the proposed Settlement is within the range of possible final approval and, thus, whether notice to the Class of the terms and conditions of the proposed Settlement, and the scheduling of a formal Fairness Hearing, are appropriate. *White v. National Football League*, 822 F. Supp. 1389, 1399 (D. Minn. 1993); *NASDAQ Mkt.-Makers*, 176 F.R.D. at 102. As described herein, the proposed Settlement falls well within the range of reasonableness and thus warrants preliminary approval.

In the First Circuit, the following factors are considered in evaluating the fairness of a class action settlement for preliminary approval: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron(R) Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004). Where those factors are established, with the exception of the fourth prong, which cannot be evaluated until after notice has been disseminated to the settlement class, "a presumption of fairness attaches to the court's determination." *Id.* (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

> A. **The Negotiations Were Fair, Conducted At Arm's Length, And Supervised By A Former Federal Judge**

The Court should first consider the circumstances surrounding the negotiations to ascertain whether any of the facts surrounding the negotiations raise an inference of collusion. *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1043 (1st Cir. 1996); *Hawkins v. Comm'r of New Hampshire Dep't of Health & Human Servs.*, No. 99-143, 2004 U.S. Dist. LEXIS 807, at *15 (D.N.H. Jan. 23, 2004); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement"). Here, the proposed Settlement for $2,875,000 is the product of extensive negotiations, including an in-person mediation session conducted by Judge Politan, and many telephonic sessions. The negotiations were at all times hard-fought and at arm's-length, and have produced a result that the settling parties believe to be in their respective best interests. Moreover, there is absolutely no fact that could be taken to even hint of collusion.

> B. **The Settlement Was Reached After Substantial Discovery**

The Court should also consider whether sufficient discovery had been completed for both sides to understand the strengths and weaknesses of their respective cases. A presumption in favor of the proposed Settlement arises when sufficient discovery has been provided and counsel have experience in similar cases. *See Hawkins*, 2004 U.S. Dist. LEXIS 807, at *15; *see also City P'ship,* 100 F.3d at 1043; *Rolland v. Celluci*, 191 F.R.D. 3, 6 (D. Mass. 2000).

In this case, the negotiations between experienced counsel were conducted only after Lead Plaintiffs had reviewed the tens of thousands of pages of documents and electronic data produced by Defendants. In addition, Lead Counsel conducted legal research regarding the applicable law with respect to the claims. Based on their familiarity with the factual and legal

issues, the parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation.

        **C.**      **Lead Counsel And Defense Counsel Are Highly Experienced And Capable**

The proponents of settlement are highly experienced in this type of litigation. As the court explained in *Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 U.S. Dist. LEXIS 13401, at *5 (S.D.N.Y. June 6, 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case." When a settlement is negotiated at arm's-length by experienced counsel, as here, there is a presumption that it is fair and reasonable. *See In re Excess Value Ins. Coverage Litig.*, No. M-21-84, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) ("Where the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (citation omitted).

Counsel on both sides of the bargaining table are experienced and well-respected firms practicing in this field. Defendants' counsel is Wilmer Cutler Pickering Hale & Dorr LLP, a prominent national law firm with has a strong reputation in this field. Plaintiff's Lead Counsel, Milberg Weiss Bershad & Schulman LLP, is a nationally-known firm in this field, with substantial success and decades of experience in representing plaintiff shareholder classes. Likewise, Plaintiffs' Liaison Counsel, Nancy Gans, of Moulton, P.C., has extensive experience in complex litigation and settlements.

        **D.**      **The Settlement Falls Within The Range Of Possible Approval**

As explained above, the proposed Settlement was reached only after protracted arm's-length negotiations between the parties and thorough consideration of the advantages and

disadvantages of continued litigation. Lead Counsel, who have a great deal of experience in the prosecution and resolution of complex class action securities litigation, have carefully evaluated the merits of this case and the proposed Settlement. Even if the matter were to proceed through trial, Lead Counsel know from experience that the apparent strength of plaintiffs' case is no guarantee against a defense verdict. Furthermore, even if a judgment were obtained against the Defendants at trial, the recovery might be no greater, and indeed might be less, than the $2,875,000 provided by the proposed Settlement.

Moreover, the proposed Settlement has no obvious deficiencies. The Settlement provides for payment of $2,875,000 in cash, which constitutes a significant recovery for the Class Members. The Settlement provides no preferential treatment for the Lead Plaintiffs, who will receive distributions from the Settlement proceeds calculated in the same manner as the distributions to all other Class Members. The Settlement does not mandate excessive compensation for Plaintiffs' Counsel. As set forth in the Settlement Notice, Plaintiffs' Counsel will apply for an award of one-third (33-1/3%) of the Gross Settlement Fund and for reimbursement of their expenses in the approximate amount of $35,000, and any award of fees and expenses is subject to Court approval. Lead Counsel will provide a breakdown of all out-of-pocket expenses at the time of the final hearing.

As for the proposed Plan of Allocation, there is no reason to doubt its fairness for purposes of preliminary approval. Even at the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel." *In re American Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001). The Plan of Allocation proposed by Lead Plaintiffs is based on Plaintiffs' allegations that the market price of Network Engines common

11

stock was artificially inflated during the Class Period until December 10, 2003, when the price of Network Engines common stock declined precipitously following the Defendants' disclosures. Thus, under the proposed Plan of Allocation, the value of a claim will vary depending on when the claimant bought and/or sold Network Engines common stock, and claims will be discounted to recognize the greater difficulty a Class Member who sold before the corrective disclosures would face in proving that the loss was caused by the Defendants' alleged misstatements.

## E. CONCLUSION

In light of the above considerations, the proposed Settlement as a whole is reasonable and within the range of possible approval. Lead Counsel therefore respectfully submits that the Court should therefore grant preliminary approval of the Settlement and direct that notice of it be given to the Class. Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Order, submitted as Exhibit A to the Settlement Stipulation.

DATED:  March 31, 2006                           Respectfully submitted,

**MOULTON & GANS, P.C.**

By: /s/ Nancy Freeman Gans
Nancy Freeman Gans, BBO No. 184540
55 Cleveland Road
Wellesley, MA 02481
Telephone:  (781) 235-2246
Facsimile:  (781) 239-0353

**Liaison Counsel To Lead Plaintiff and the Class**

**MILBERG WEISS BERSHAD
   & SCHULMAN LLP**
Rachel S. Fleishman
Andrew Wilmar
One Pennsylvania Plaza
New York, NY  10119-0165
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

**Lead Counsel**

**Network Engines _ Preliminary Approval Brief.DOC**

13

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................3

    A. Procedural History ......................................................................................................3

    B. Plaintiffs' Allegations .................................................................................................4

    C. Discovery ....................................................................................................................5

    D. The Mediation ............................................................................................................5

III. THE PROPOSED SETTLEMENT..........................................................................................6

IV. THE SETTLEMENT MORE THAN MEETS THE STANDARD FOR
PRELIMINARY APPROVAL .................................................................................................7

    A. The Negotiations Were Fair, Conducted At Arm's Length, And
Supervised By A Former Federal Judge ....................................................................9

    B. The Settlement Was Reached After Substantial Discovery.......................................9

    C. Lead Counsel And Defense Counsel Are Highly Experienced And
Capable .....................................................................................................................10

    D. The Settlement Falls Within The Range Of Possible Approval ..............................10

    E. CONCLUSION........................................................................................................12

**TABLE OF AUTHORITIES**

**CASES**

*In re American Bank Note Holographics, Inc. Sec. Litig.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................................11

*City Partnership Co. v. Atlantic Acquisition Ltd. P'ship*,
   100 F.3d 1043 (1st Cir. 1996) ..............................................................................................9

*Duhaime v. John Hancock Mutual Life Insurance Co.*,
   183 F.3d 1 (1st Cir. 1999) ....................................................................................................8

*Durett v. Housing Authority of Providence*,
   896 F.2d 600 (1st Cir. 1990) ................................................................................................8

*In re Excess Value Insurance Coverage Litig.*,
   No. M-21-84, 2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) .................................10

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) ..............................................................................................9

*In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*,
   55 F.3d 768, 785 (3d Cir. 1995)............................................................................................8

*Hawkins v. Commissioner of New Hampshire Department of Health & Human Services*,
   No. 99-143, 2004 U.S. Dist. LEXIS 807 (D.N.H. Jan. 23, 2004) ...........................................9

*In re Lupron(R) Marketing & Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ...................................................................................8

*Lyons v. Marrud, Inc.*,
   No. 66 Civ. 415, 1972 U.S. Dist. LEXIS 13401 (S.D.N.Y. June 6, 1972)..............................10

*In re NASDAQ Market-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) .......................................................................................7, 8

*Rolland v. Celluci*,
   191 F.R.D. 3 (D. Mass. 2000)...............................................................................................9

*White v. National Football League*,
   822 F. Supp. 1389 (D. Minn. 1993) ......................................................................................8

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(e) ...................................................................................................................1

## MISCELLANEOUS

*Manual for Complex Litigation* (Fourth) (2004) ..............................................................................7