## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **In Re:  NETWORK ENGINES INC.** | ) | |
| **SECURITIES LITIGATION** | ) | CA NO. 03-12529-JLT |
| | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION

**MOULTON & GANS, P.C.**
Nancy Freeman Gans
BBO No. 184540
55 Cleveland Road
Wellesley, MA 02481
(781) 235-2246

**MILBERG WEISS BERSHAD & SCHULMAN LLP**
George A. Bauer III
Andrew Wilmar
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
Samuel H. Rudman
David A. Rosenfeld
200 Broadhollow Road, Suite 406
Melville, NY 11747
(631) 367-7100

**BROWER PIVEN, A Professional Association**
Charles J. Piven
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
(410) 986-0036

Dated:  July 19, 2006

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 3

III.    IT IS APPROPRIATE TO FINALLY CERTIFY THE CLASS FOR PURPOSES
        OF SETTLEMENT .............................................................................................. 5

        A.      The Prerequisites of Rule 23(a) Are Met .............................................. 7

                1.      *The Proposed Class is So Numerous that Joinder of All Members
                        is Impracticable* ......................................................................... 7

                2.      *There are Questions of Law and Fact Common to the Class and
                        the Proposed Class Representatives' Claims are Typical of Those
                        of the Class* ................................................................................ 8

                3.      *The Proposed Class Representatives Will Fairly and Adequately
                        Protect the Interests of the Class* ............................................ 11

        B.      The Requirements for Rule 23(b)(3) Have Been Met ......................... 12

IV.     THE COURT SHOULD GRANT FINAL APPROVAL TO THE PROPOSED
        SETTLEMENT .................................................................................................. 13

        A.      The Proposed Settlement Is Fair, Reasonable, and Adequate ............. 13

                1.      Lead Plaintiffs Faced Potentially Significant Obstacles to
                        Recovery .................................................................................... 15

                2.      The Likely Expense and Duration of the Litigation Justifies the
                        Settlement .................................................................................. 17

                3.      The Stage of the Proceedings at Which the Settlement
                        Was Reached Favors Approval .................................................. 18

                4.      The Amount of the Settlement Was Reasonable in Light of the
                        Risks of Continued Litigation ................................................... 18

                5.      The Settlement Was Reached After Arm's-Length Negotiations ............ 20

                6.      The Class Has Reacted Positively to the Settlement ................. 21

V.      THE PLAN OF ALLOCATION IS FAIR AND REASONABE AND SHOULD
        BE APPROVED ................................................................................................ 22

VI.     CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adair v. Bristol Tech. Sys.*,
    1999 U.S. Dist. LEXIS 17627 (S.D.N.Y. Nov. 12, 1999).....................................................15

*Adair v. Sorenson*,
    134 F.R.D. 13 (D. Mass. 1991)...........................................................................................10

*Alexander v. Q.T.S. Corp.*,
    1999 U.S. Dist. LEXIS 11842 (N.D. Ill. July 30, 1999)......................................................12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................5, 7, 11, 13

*Andrews v. Bechtel Power Corp.*,
    780 F.2d 124 (1st Cir. 1985)..............................................................................................11

*In re Bank of Boston Corp. Sec. Litig.*,
    762 F. Supp. 1525 (D. Mass. 1991)....................................................................................10

*Bell Atl. Corp. v. Bolger*,
    2 F.3d 1304 (3d Cir. 1993) ...............................................................................................21

*In re Biogen Sec. Litig.*,
    179 F.R.D. 25 (D. Mass. 1997)............................................................................................6

*Burstein v. Applied Extrusion Techs., Inc.*,
    153 F.R.D. 488 (D. Mass. 1994).........................................................................................10

*Bussie v. Allmerica Fin. Corp.*,
    50 F. Supp. 2d 59 (D. Mass. 1999).....................................................................14, 18, 20, 21

*In re Carbon Black Antitrust Litig.*,
    Civ. No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660 (D. Mass. Jan. 18, 2005)............11, 12

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..............................................................................................19

*In re Charter Commc'n, Inc. Sec. Litig.*,
    2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) ....................................................22

*City P'ship. Co. v. Atl. Acquisition  Ltd. P'ship.*,
    100 F.3d 1041 (1st Cir. 1996).......................................................................................14, 20

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997)................................................................................... *passim*

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    183 F.3d 1 (1st Cir. 1999)......................................................................................13

*Eisenberg v. Gagnon,*
    766 F.2d 770 (3d Cir. 1985) .....................................................................................6

*Gen. Tel. Co. of Southwest v. Falcon,*
    457 U.S.147 (1982)....................................................................................................8

*Gorsey v. I.M. Simon & Co.,*
    121 F.R.D. 135 (D. Mass. 1988)..............................................................................7

*Grace III v. Perception Tech. Corp.,*
    128 F.R.D. 165 (D. Mass. 1989)............................................................................12

*Greenspun v. Bogan,*
    492 F.2d 375 (1st Cir. 1974)........................................................................5, 15, 22

*Guckenberger v. Boston Univ.,*
    957 F. Supp. 306 (D. Mass. 1997) .........................................................................10

*Headley v. Chrysler Motor Corp.,*
    141 F.R.D. 362 (D. Mass. 1991)............................................................................19

*In re Heritage Bond Litig.,*
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) ....................................22

*In re Ikon Office Solutions Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000)............................................................................22

*Lamphere v. Brown Univ.,*
    71 F.R.D. 641 (D.R.I. 1976) ....................................................................................6

*Lessard v. Metropolitan Life Ins. Co.,*
    103 F.R.D. 608 (D. Me. 1984)..................................................................................6

*In re Lloyd's Am. Trust Fund Litig.,*
    2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)....................................19

*Maley v. Del Global Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................22

*McLaughlin v. Liberty Mut. Ins. Co.,*
    224 F.R.D. 304 (D. Mass. 2004).............................................................................8

*Modell v. Eliot Sav. Bank,*
    139 F.R.D. 17 (D. Mass. 1991)..............................................................................11

*In re New England Mut. Life Ins. Co. Sales Practices Litig.*,
183 F.R.D. 33 (D. Mass 1998)...................................................................................9

*Newman v. Stein*,
464 F.2d 689 (2d Cir. 1972) ....................................................................................19

*In re One Bancorp Sec. Litig.*,
136 F.R.D. 526 (D. Me. 1991)...................................................................................6

*In re Orthopedic Bone Screw Prod. Liab. Litig.*,
176 F.R.D. 158 (E.D. Pa. 1997)..............................................................................21

*In re PaineWebber Ltd. P'ships. Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................18, 22

*In re Polymedica Corp. Sec. Litig.*,
224 F.R.D. 27 (D. Mass. 2004)............................................................................8, 10

*In re Prudential Insurance Co. of Am. Sales Practice Litig.*,
962 F. Supp. 450 (D.N.J. 1997) ..............................................................................21

*Risinger v. Concannon*,
201 F.R.D. 16 (D. Me. 2001).....................................................................................6

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997) ...............................................................................17

*Rodrigues v. Members Mortgage Co.*,
226 F.R.D. 147 (D. Mass 2005).................................................................................8

*Rolland v. Cellucci*,
191 F.R.D. 3 (D. Mass. 2000)..................................................................................14

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
323 F.3d 32 (1st Cir. 2003).......................................................................................7

*Strougo v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ..................................................................17, 21

*Trief v. Dun & Bradstreet Corp.*,
840 F. Supp. 277 (S.D.N.Y. 1993) ...........................................................................17

*In re Warner Commc'n Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *affd*, 798 F.2d 35 (2d Cir. 1986) ....................19

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
208 F.3d 288 (1st Cir. 2000)....................................................................................13

*Wesley v. General Motors Acceptance Corp.*,
   1992 U.S. Dist. LEXIS 3594 (N.D. Ill. March 20, 1992)......................................................8

*Wilcox v. Petit*,
   117 F.R.D. 314 (D. Me. 1987)............................................................................................6

## STATE CASES

*Denney v. Jenkins & Gilchrist*,
   2005 WL. 388562 (S.D.N.Y. Feb. 18, 2005)......................................................................5

*In re Initial Public Offering*,
   2004 WL. 2297401 (S.D.N.Y. Oct. 13, 2004).....................................................................5

*McAdams v. Massachusetts Mut. Life Ins. Co.*,
   2002 WL. 1067449 (D. Mass. May 15, 2002).....................................................................6

## FEDERAL STATUTES

F.R.C.P. 23(a)(1)...................................................................................................................7

Fed. R. Civ. P. 23(a)(4).......................................................................................................11

**Page**

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs submit this memorandum of law in support of their motion for an order (i) finally certifying the Class herein for the purposes of the settlement; (ii) granting final approval of the proposed $2,875,000 cash settlement of this action (the "Settlement"), and (ii) approving the proposed Plan of Allocation for distributing the net settlement fund to Class Members.  The detailed terms of the Settlement are set forth in the Stipulation and Agreement of Settlement, dated March 29, 2006, entered into between Lead Plaintiffs Wing Kam Yu, Blake Kunkel, and Thomas Cunningham and plaintiffs Sergio and Ricardo Guerrera (collectively "Plaintiffs") on the one hand, and Defendants Network Engines, Inc. ("Network Engines"), John Curtis, Douglas Bryant, and Lawrence Genovesi (collectively "Defendants") on the other hand.

The proposed Settlement was achieved after Plaintiffs had overcome Defendants' motion to dismiss the Complaint and after informal discovery that illustrated the strengths and weaknesses of Lead Plaintiffs' case.  Defendants had produced, and Plaintiffs' Counsel reviewed, tens of thousands of pages of relevant documents, including, among other things, Network Engines' internal e-mails.  Further, the Settlement was a result of arm's-length and adversarial negotiations which included a mediation session under the auspices of the Honorable Nicholas H. Politan, retired Judge of the United States District Court for the District of New Jersey.  If approved, the Settlement will provide an immediate cash benefit without the uncertainties, delay, and costs of further litigation for a Class of persons who purchased or otherwise acquired Network Engines common stock during the period between November 6, 2003 and December 10, 2003, inclusive.

Plaintiffs submit that the Class here, consisting of all persons who purchased or otherwise acquired the common stock of Network Engines during the period between November 6, 2003 and December 10, 2003, inclusive, is particularly appropriate for Class treatment and easily meets the requirements for class certification under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

Plaintiffs submit that the benefits conferred by the Settlement represent a significant result for the Class, particularly in light of the difficulties and risks of this case.  This memorandum of law details why the proposed $2,875,000 cash settlement readily satisfies the criteria for approval of a class action settlement set forth by Rule 23(e) of the Federal Rules of Civil Procedure.

Plaintiffs also submit that the Court should approve the proposed Plan of Allocation for distributing the net proceeds of the Settlement.  The proposed Plan provides for a proportionate distribution of the net settlement proceeds based on a "Recognized Claim" formula which fairly allocates the recovery among Class Members in accordance with Lead Plaintiffs' theory of damages in the action and Lead Counsel's evaluation of the strengths and weaknesses of the claims of Class Members.

Importantly, while more than eight thousand copies of the Court-approved Notice of Pendency of Class Action and Proposed Settlement, Motion For Attorneys' Fees and Settlement Fairness Hearing (the "Notice") were distributed to potential Class Members advising them of the Settlement, the Plan of Allocation, and the motion for attorneys' fees and reimbursement of expenses, and their rights with respect thereto, including their right to object to the Settlement, the Plan of Allocation, and/or the motion for attorneys' fees and expenses and the procedure for doing so, not a single Class Member has objected to the Settlement.  In view of the wide

dissemination of the Notice, the absence of any objection to any of the terms of the Settlement indicates the approval of the Class and helps support a finding that the Settlement is fair, reasonable and adequate, and should be approved by the Court.  In addition, the absence of any objections to the proposed Plan of Allocation is evidence that the Plan is a fair and reasonable method for allocating the net settlement fund, and should be approved.

## II.    BACKGROUND

The facts relevant to this motion to approve the Settlement and the Plan of Allocation are set forth more fully in the accompanying Joint Declaration of Plaintiffs' Counsel in Support of the Proposed Class Action Settlement and Petition for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Joint Decl."), submitted herewith.

In brief, this Settlement will resolve claims, initially brought in 2003, that Defendants are liable under the federal securities laws for allegedly false and misleading statements made by Defendants during the Class Period about Network Engines' then-current financial condition and future net income.   In their Amended Consolidated Complaint dated June 4, 2004 (the "Complaint"), Lead Plaintiffs allege that Defendants misled investors in a November 6, 2003 press release by failing to disclose materially adverse facts regarding Network Engines' relationship with its key strategic partner, EMC Corporation ("EMC"), and the resulting negative impact on Network Engines distribution business.  Lead Plaintiffs allege that Defendants knew but failed to disclose to the investing public that EMC was expected to renegotiate its distribution contract with Network Engines and demand price increases and other concessions that would adversely impact Network Engines' gross profit and operating margins.  *See* Joint Decl. at ¶¶ 10-14.  For their part, Defendants dispute that they violated the federal securities laws in any respect.

On August 13, 2004, the Defendants filed a motion to dismiss the Complaint, which, following full briefing of the issues, was denied by the Court in its Order dated November 22, 2004. On December 23, 2004, the Defendants served their Answer to the Complaint in which they denied all substantive allegations of wrongdoing and asserted a number of affirmative defenses.

In February of 2005, the parties agreed to engage in an expedited informal discovery process. As part of the informal discovery process, Defendants produced over fifty thousand pages of internal company documents, including key company emails. *See* Joint Decl. at ¶¶ 20-25. The parties also engaged in formal discovery, including serving, and responding and objecting to, document requests and interrogatories. *Id.* at ¶ 26.

Following Lead Plaintiffs' Counsel's review of Defendants' informal production, Counsel for both sides conducted a series of meetings and discussions. However, the parties remained far apart in terms of their respective assessments of both the merits of Lead Plaintiffs' claims and the amount of damages suffered by Class Members. In an effort to break the impasse, the parties agreed to engage in mediation, and retained the Honorable Nicholas Politan as a mediator. On October 12, 2005, Counsel for Lead Plaintiffs, Defendants, and Defendants' insurer conducted a mediation before Judge Politan at the offices of Lead Counsel in New York. During this mediation, both sides presented their opposing views of the case. Finally, after intensive negotiations, a settlement was tentatively reached. *See* Joint Decl. at ¶¶ 27-29**.**

Over the next several months, the parties negotiated definitive settlement documentation, which were filed with the Court on March 31, 2006, along with Lead Plaintiffs' motion for preliminary approval of the Settlement. *See* Joint Decl. at ¶ 30. On April 4, 2006, the Court entered the Preliminary Order for Notice and Hearing in Connection With Settlement

4

Proceedings (the "Preliminary Order") preliminarily approving the proposed Settlement, subject

to further review after notice was given to the Class and a hearing to consider final approval,

approving the form of the Notice, and directing that the Notice be sent to Class Members.  *Id.*

In accordance with the Preliminary Order more than eight thousand copies of the Notice

have been distributed to potential Class Members, brokers, banks and other nominees.  *See*

Affidavit of Kim R. Schmidt Re: (A) Mailing of the Notice and the Proof of Claim, and (B)

Report on Receipt of Exclusion Requests (the "Schmidt Affidavit"), submitted herewith.[1]  The

Notice contained a detailed description of the history of this Action and the terms of the

proposed Settlement and Plan of Allocation.  As stated above, not a single Class Member has

objected to the Settlement or the Plan of Allocation, nor has any Class Member requested

exclusion from the Class.

## III.    IT IS APPROPRIATE TO FINALLY CERTIFY THE CLASS FOR PURPOSES OF SETTLEMENT

The Class herein was preliminarily certified for purposes of the Settlement by the Court's

Preliminary Order.  For purposes of the final approval of the Settlement, the putative Class must

meet the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)[2].  In evaluating a motion to certify,

---

[1]    In addition, a summary notice was published on April 27, 2006, in the national edition of *Investor's Business Daily* as directed in the Preliminary Order. *See* Affidavit of John J. Mills Re: Publication of the Summary Notice of Proposed Settlement of Class Action and Settlement Hearing (the "Mills Affidavit"), submitted herewith.

[2]    Plaintiffs have the burden of showing that the proposed class comports with Rule 23 and the burden of establishing that the Settlement should be approved.  *Greenspun v. Bogan*, 492 F.2d 375, 378 (1st Cir. 1974); *see also* Manual for Complex Litigation (Fourth) § 21.631. However, "'a district court is forbidden to weigh the evidence on class certification [and] plaintiffs need not establish the elements of Rule 23 by a preponderance of the evidence.'" *Denney v. Jenkins & Gilchrist*, 2005 WL 388562, at *6 (S.D.N.Y. Feb. 18, 2005) (*citing In re Initial Public Offering*, 2004 WL 2297401, at *19 (S.D.N.Y. Oct. 13, 2004) (citation omitted).

"district courts in this circuit have frequently recognized that 'Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule.'" *McAdams v. Massachusetts Mut. Life Ins. Co.*, 2002 WL 1067449, at *7 (D. Mass. May 15, 2002) (*quoting Lessard v. Metropolitan Life Ins. Co.*, 103 F.R.D. 608, 610 (D. Me. 1984)) (emphasis added). Securities fraud actions are particularly well-suited for class certification. *See, e.g., In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 533 (D. Me. 1991) ("This Court concurs with the numerous cases that have discussed the desirability and utility of the class action device in the context of federal securities law litigation"); *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("the effectiveness of the securities laws may depend in large measure on the application of the class action device").

Rule 23 of the Federal Rules of Civil Procedure provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and also if the action qualifies under one of the subdivisions of Rule 23(b).  Importantly, the inquiry as to whether the requirements of Rule 23 have been satisfied does not extend to the merits of plaintiffs' claims.  Rather the focus is limited to whether the prerequisites of Rule 23 are met. *In re Biogen Sec. Litig.*, 179 F.R.D. 25, 41 (D. Mass. 1997) ("a Court does not consider the merits of a claim in determining class certification"); *Risinger v. Concannon*, 201 F.R.D. 16, 22 (D. Me. 2001) (*citing Wilcox v. Petit,* 117 F.R.D 314, 319 (D. Me. 1987)) ("Class certification is not an appropriate mechanism 'to conduct a preliminary inquiry into the merits of a suit'").  Therefore, for purposes of class certification, the allegations of the Complaint must be accepted as true. *See, e.g. Lamphere v. Brown Univ.*, 71 F.R.D. 641, 646 (D.R.I. 1976) (acknowledging the "usual policy of accepting the plaintiff's factual allegations as true for purposes of class certification").

Here, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the parties seek final certification of a Settlement Class on behalf of all persons who purchased or otherwise acquired the common stock of Network Engines between November 6, 2003 and December 10, 2003, inclusive.  Excluded from the Class are the Defendants, the officers and directors of Network Engines during the Class Period, members of their immediate families (parents, siblings, spouses and children) and their heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest at any time during the Class Period.

As demonstrated below, Lead Plaintiffs satisfy the prerequisites of Rule 23(a) and the requirements of Rule 23(b)(3) that a class action is superior to alternative methods for fairly and efficiently adjudicating Defendants' alleged violations of the securities laws.  Accordingly, class certification is appropriate and should be granted for purposes of this Settlement.

### A.    The Prerequisites of Rule 23(a) Are Met

Rule 23(a) of the Federal Rules of Civil Procedure requires a party seeking class certification to satisfy four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003) (*citing Amchem*, 521 U.S. at 614).  In this case, as set forth below, all four requirements of Rule 23(a) have been met.

### 1.    *The Proposed Class is So Numerous that Joinder of All Members is Impracticable*

To satisfy the numerosity requirement, the proposed class must be "so numerous that joinder of all members is impracticable."  F.R.C.P. 23(a)(1).  To establish numerosity, plaintiffs need only demonstrate that it would be difficult or inconvenient to join all members of the class. *See Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (holding joinder of group

of 800-900 to be impracticable). Here, where estimates of the number of persons who purchased

Network Engines common stock numbers in the thousands, and over eight thousand copies of the

Notice have been distributed, it is incontrovertible that the numerosity requirement is easily

satisfied.

2.      *There are Questions of Law and Fact Common to the Class and the
        Proposed Class Representatives' Claims are Typical of Those of the
        Class*

The commonality requirement is met if "there are questions of law or fact common to the

class." Rule 23(a)(2). Typicality, on the other hand, requires that the claims of the named

plaintiffs be typical of the class claims. Rule 23(a)(3). Frequently, the requirements of Rule

23(a)(2) and (a)(3) are considered together. *See Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S.

147, 157 n.13 (1982); *Rodrigues v. Members Mortgage Co.*, 226 F.R.D. 147, 151 (D. Mass

2005). Essentially, both requirements are in place "to ensure that maintenance of a class action

is economical and that the named plaintiff's claim and the class claims are so interrelated that the

interests of the Class Members will be fairly and adequately protected in their absence." *Gen.

Tel. Co.*, 457 U.S. at 157 n.13.

The commonality requirement of Rule 23(a)(2) is satisfied even if there is only a single

issue common to the entire class. *See, e.g., McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304,

309 (D. Mass. 2004) (while requiring that "questions of law or fact be shared by the prospective

class," Rule 23(a)(2) does not require that "every question be common."). Indeed, the

commonality requirement is a "low hurdle" requiring that questions of law or fact be common to

the class. *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997)

(*quoting Wesley v. General Motors Acceptance Corp.,* 1992 U.S. Dist. LEXIS 3594 at *10 (N.D.

Ill. March 20, 1992)). Commonality asks only whether the "resolution of the common questions

affect all or a substantial number of the class members." *Id.; see also In re Polymedica Corp.*

*Sec. Litig.*, 224 F.R.D. 27, 35 (D. Mass. 2004) (although class members must share some questions in common, not all questions need to be common to the class).

Here, Plaintiffs have alleged that Defendants engaged in a scheme to artificially inflate the price of Network Engines common stock during the Class Period by issuing false and misleading statements in a press release that they allegedly knew to be false when made. These allegations give rise to numerous questions of law and fact common to the Class, including, among others:

(a)    whether Defendants' statements and omissions, alleged in the Complaint, violated the federal securities laws;

(b)    whether Defendants misrepresented or omitted material facts about the business relationships, financial condition, and business prospects of Network Engines in the November 6, 2003 press release;

(c)    whether Defendants acted knowingly or recklessly in issuing allegedly false and misleading statements;

(d)    whether the price of Network Engines common stock was artificially inflated during the Class Period

(e)    whether such artificial inflation was the result of Defendants' material misrepresentations and non-disclosures; and

(f)    the extent to which Class Members sustained damages and the proper measure of those damages.

These central issues at issue here, which are common to all Class Members' claims, satisfy the requirement that there be common questions of law or fact. *See, e.g., In re New England Mut. Life Ins. Co. Sales Practices Litig.,* 183 F.R.D. 33, 39 (D. Mass 1998) (court able

to identify common issues of act and law where allegations were of common course of fraudulent conduct by high-level decision makers).

With respect to typicality, "[t]he central inquiry in determining whether a proposed class has typicality is 'whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." *In re Polymedica*, 224 F.R.D. at 36; *see also Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (*quoting In re Bank of Boston Corp. Sec. Litig.*, 762 F. Sup. 1525, 1532 (D. Mass. 1991); *Burstein v. Applied Extrusion Techs., Inc.*, 153 F.R.D. 488, 491 (D. Mass. 1994); *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991). Generally, a class representative's claim is found to be typical where his or her "injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims" and where they stem from "the same legal theory" as those of absent class members. *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991).

Here, Plaintiffs satisfy the typicality inquiry because they allege they were injured by the purchase of Network Engines common stock during the time period between the Defendants' issuance of the allegedly false and misleading press release and the revelation, slightly more than one month later, when on December 10, 2003 the Defendants revealed the omitted adverse facts and the allegedly inflated price of Network Engines common stock fell as a result of the corrective disclosure. Plaintiffs, like all other Class Members, contend that Defendants violated the federal securities laws and, in particular, the Securities Exchange Act of 1934. In short, Lead Plaintiffs are purchasers of Network Engines common stock who are seeking to prove Defendants' liability on theories that are identical to those available to other Class Members and based on an identical set of facts as set forth in the Complaint. Accordingly, Lead Plaintiffs' claims are typical of the Class.

10

3. ***The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class***

The adequacy of representation prong concerns the adequacy of a proposed class representative and their counsel. Fed. R. Civ. P. 23(a)(4). The adequacy prong "serves to uncover conflicts of interest between [the] named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). It also determines whether counsel are "qualified, experienced, and able to vigorously conduct the proposed litigation." *In re Carbon Black Antitrust Litig.*, Civ. No. 03-10191-DPW, 2005 U.S. Dist. LEXIS 660, at *55 (D. Mass. Jan. 18, 2005) *quoting Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985). Each of these elements is satisfied here.

As demonstrated above, Lead Plaintiffs' interests are consistent with, and not antagonistic to or in conflict with, the interests of other Class Members. Lead Plaintiffs allege that Defendants issued materially false and misleading statements with scienter that misled the investing public about, among other things, Network Engines' then-current financial condition and future net income. These allegations affect Lead Plaintiffs and all other class members alike. Thus, Lead Plaintiffs have been damaged by the same alleged conduct, and possess the incentive to fairly represent all Class Members' claims to achieve the maximum possible recovery.

Additionally, having suffered substantial monetary losses as a result of the misconduct alleged in the Complaint, Lead Plaintiffs have been committed to the vigorous prosecution of this action. Lead Plaintiffs were appointed to represent the Class by this Court's order dated March 17, 2004. Lead Plaintiffs have been represented by counsel who have extensive experience in securities litigation and have the ability and willingness to protect the interests of the Class. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (approving lead counsel because counsel was "familiar with and experienced in this type of litigation"). Indeed,

11

as demonstrated by their conduct over the past three years, Lead Counsel have vigorously litigated this action.

**B.    The Requirements for Rule 23(b)(3) Have Been Met**

As noted above, in addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23.  Rule 23(b)(3) is met where the court finds that "questions of law or fact common the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  As recited above, there are numerous common questions affecting the claims of the Class.  There are few if any questions affecting only individual members of the Class.  Class action treatment is superior to any alternative here because: individuals have little interest in controlling the prosecution of separate actions; the litigation already commenced by members of the Class have been consolidated herein; and no difficulties are likely to arise in managing this class action, especially in light of the Settlement.

Class actions are appropriate where, as here, individual claims may be so small as to make it unlikely that class members would bring claims on their own because the costs of litigation would be higher than the value of any individual claim.  *Duhaime*, 177 F.R.D. at 65 (citation omitted); *Grace III v. Perception Tech. Corp.,*128 F.R.D. 165, 171 (D. Mass. 1989); *In re Carbon*, 2005 U.S. Dist. LEXIS 660, at \*55 *quoting Alexander v. Q.T.S. Corp.*, 1999 U.S. Dist. LEXIS 11842, at \*42 (N.D. Ill. July 30, 1999) ("In light of the great costs of discovery and trial, class certification is particularly important where many small and medium sized claimants are involved who would not otherwise be able to secure relief").  It also is preferable to concentrate these claims in a single forum rather than in numerous locations throughout the country.  *Id.*  Finally, the Supreme Court, in *Amchem*, held that a district court need not

determine the manageability prong of Rule 23(b)(3) if reviewing a settlement-only class. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (*citing Amchem*, 521 U.S. at 620). Accordingly, the Court need not reach the issue of whether the proposed class would be manageable.

Here, to require individual members of the Class to bring multiple actions against the Defendants would result in an enormous duplication of judicial effort and expense – not to mention that such actions would face the same obstacles with respect to discovery that Lead Plaintiffs faced in this litigation.

In sum, Lead Plaintiffs have demonstrated that the Class should be certified for settlement purposes because the requirements of Rule 23 have been met.

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT

It is submitted that the proposed Settlement is fair, reasonable, and adequate and should be approved by the Court. The proposed Plan of Allocation has a reasonable and rational basis, and is fair and equitable to Class Members, and should also be approved by the Court.[3]

### A.    The Proposed Settlement Is Fair, Reasonable, and Adequate

In deciding whether to grant final approval to a class action settlement, the Court must determine whether the proposed settlement is fair, reasonable and adequate. *See Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 7 (1st Cir. 1999). A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's-length negotiations conducted by experienced and capable

---

[3]     The facts supporting final approval of the proposed Settlement and Plan of Allocation are only summarized herein. Lead Plaintiffs respectfully refer the Court to the Joint Decl. for a more detailed discussion of the litigation risks and other factors supporting final approval of the Settlement and the proposed Plan of Allocation.

counsel, and after "sufficient discovery has been provided." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship.*, 100 F.3d 1041, 1043 (1st Cir. 1996); *see also Rolland v. Cellucci*, 191 F.R.D. 3, 11 (D. Mass. 2000) ("Only when discovery was complete were intensive arms-length settlement negotiations conducted, an approach which supports the "strong initial presumption" of the settlement's substantive fairness."); *Duhaime*, 177 F.R.D. at 68 (quoting *City P'ship Co.*).  Here, as part of the informal discovery process, Defendants provided tens of thousands of pages of documents, including company e-mails, permitting Lead Plaintiffs to get an accurate gauge of the strengths and weaknesses of their case.

"The fairness determination is not based on a single inflexible litmus test but, instead, reflects [the court's] studied review of a wide variety of factors bearing on the central question of whether the settlement is reasonable in light of the uncertainty of litigation." *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72 (D. Mass. 1999).  The relevant factors courts in this Circuit consider in evaluating the fairness of a class action settlement include: (1) the potentially significant obstacles to a recovery; (2) the complexity and likely duration of the litigation; (3) the stage of the proceedings at which the settlement was reached; (4) the amount of the settlement in light of the risks of litigation; (5) whether the settlement was reached after arm's-length negotiations and the opinion of qualified counsel; and (6) the reaction of the Class to the proposed settlement.  *See, e.g., Rolland*, 191 F.R.D. at 8; *Bussie,* 50 F. Supp. 2d at 76-78; *Duhaime*, 177 F.R.D. at 67-68.  "In evaluating the substantive fairness of a class action settlement, the court cannot, and should not, use as a benchmark the highest award that could be made to the plaintiff[s] after full and successful litigation of the claim[s]." *Duhaime*, 177 F.R.D. at 68.  As the First Circuit has observed:

> [A]ny settlement is the result of a compromise – each party surrendering something in order to prevent unprofitable litigation, and the risks and costs

> inherent in taking litigation to completion. A district court, in reviewing a settlement proposal need not engage in a trial of the merits, for the purpose of a settlement is precisely to avoid such a trial.

*Greenspun v. Bogan*, 492 F.2d 375, 381 (1st Cir. 1974). As set forth below, when assessed in light of the foregoing criteria, the proposed Settlement is fair, reasonable and adequate and should be granted final approval.

### 1.    Lead Plaintiffs Faced Potentially Significant Obstacles to Recovery

In assessing whether a proposed settlement is fair, reasonable and adequate, courts typically balance the immediacy and certainty of a recovery for the Class against the risks of continuing litigation. *E.g., Duhaime*, 177 F.R.D. at 68-69. While Lead Plaintiffs believe that the claims asserted in this Action were meritorious, as discussed below, there remained substantial obstacles to achieving a favorable outcome for the Class through continued litigation.

To prevail at trial, Lead Plaintiffs would have to demonstrate that Defendants made material misrepresentations and omissions with the requisite degree of *scienter*. Proving *scienter* is difficult in any case. *See Adair v. Bristol Tech. Sys.*, 1999 U.S. Dist. LEXIS 17627, at *6 (S.D.N.Y. Nov. 12, 1999) ("Lead Plaintiffs would have to prove that Defendants acted with *scienter*, a difficult burden to meet[.]"). Lead Plaintiffs here faced obstacles to proving that Defendants knowingly or recklessly committed the alleged misconduct, notwithstanding the other merits of the case.

As detailed more fully above in the Joint Decl., Plaintiffs' Counsel believe that internal company documents obtained by Plaintiffs' Counsel as part of the informal discovery process confirm that in the two weeks prior to the November 6th Press Release, Defendants became aware of facts indicating that EMC planned to renegotiate its distribution agreement with Network Engines and that such renegotiation could lead to materially less favorable terms. *See* Joint Decl. at ¶¶ 22-24, 56. Further supporting Plaintiffs' claim of *scienter*, the documents

confirm that Defendant Genovesi sold Network Engines stock after EMC informed Defendants of its intention to renegotiate its contract with Network Engines. *Id.* at ¶ 25, 57. Although Defendant Genovesi would attempt to show that such sales were pursuant to a pre-existing sales plan.

Lead Plaintiffs also faced obstacles to showing, on the basis of the documents, that Defendants knew what the actual terms of EMC's renegotiation with them would be. Joint Decl. at ¶ 56. This concern was compounded by Defendants' contention, first aired during their motion to dismiss but sure to be revisited at summary judgment and trial, that Defendant Genovesi's sales were entirely innocent. *See* Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Complt. ("Defs.' MTD Mem."), at 18-19, *See also* Joint Decl. at ¶¶ 57-56. Thus, establishing *scienter* would likely prove difficult.

Lead Plaintiffs were similarly faced obstacles rebutting Defendants' contention that the challenged statements amounted to non-actionable puffery. Defendants argued in their motion to dismiss that the comments in question were merely general expressions of optimism, which cannot give rise to liability under the federal securities laws. *See* Defs.' MTD Mem., at 7 (citing *Greebel*, 194 F.3d at 207; *Carney*, 135 F. Supp. 2d at 245). Lead Plaintiffs countered that puffery is an inherently contextualized inquiry, and that Defendants' statements had clear meaning when read in context. Pls.' Mem. of Law in Opp. to Defs.' Mot. to Dismiss the Complt., at 9 (citing *Schaffer v. Timberland*, 924 F. Supp. 1298, 1214 (D.N.H. 1996)).

More specifically, Defendants expressed optimism about continuing to "strengthen relationships with existing partners." *See* Joint Decl. at ¶ 11. Lead Plaintiffs believe that the "existing partners" reference, taken in context, was clearly to EMC, then responsible for 83% of Network Engines' net revenue. Defendants apparently made this statement despite their

16

knowledge that, far from "strengthening" the relationship between the two companies, the negotiations with EMC promised to yield price increases that would materially and adversely impact Network Engines' distribution business. Again, however, Lead Plaintiffs were mindful of the risk that this Court, or a jury, might well disagree with this assessment of the relevant law and evidence on a motion for summary judgment or at trial.

### 2. The Likely Expense and Duration of the Litigation Justifies the Settlement

This case presents very complex issues and the vigorous prosecution and defense thus far by Lead Plaintiffs and Defendants, respectively, indicate that continued litigation would have been "lengthy [ ] and expensive, with no guarantee of recovery by the [C]lass [M]embers." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003), *quoting Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993). Completion of discovery, including depositions and third-party discovery, would have required a significant expenditure of time and money. Summary Judgment, pre-trial proceedings, and trial would have required thousands of hours of additional work by Lead Counsel. While Plaintiffs' Counsel were fully prepared to continue the litigation and to proceed to trial, and were confident of their ability to present a *prima facie* case, trial is an inherently risky proposition which could have resulted adversely for the Class.

Further, winning a jury verdict would not provide absolute assurance of recovery. Defendants would surely have appealed any sizeable verdict in Lead Plaintiffs' favor. All of the foregoing would have significantly added to the expense of this litigation and delayed, potentially for years, any recovery to Class Members, without any assurance that Lead Plaintiffs would ultimately prevail. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1449 (11th Cir. 1997) (reversing on appeal $81 million jury verdict and dismissing case with prejudice in securities action). Settlement at this juncture thus results in a substantial and tangible present

recovery, without the attendant risk and delay of trial and post-trial proceedings.  In sum, the expense and likely duration of continued litigation weighs heavily in favor of approving the proposed Settlement.

### 3.    The Stage of the Proceedings at Which the Settlement Was Reached Favors Approval

"The stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Duhaime*, 177 F.R.D. at 67 (*citing Armstrong v. Board of School Directors of Milwaukee* 616 F.2d 305, 325 (7th Cir. 1980)).  Having completed substantive informal discovery, including the review of over fifty thousand pages of documents, having engaged in numerous negotiations both in-person and by phone, and having mediated at length before Judge Politan, Lead Plaintiffs and Lead Counsel are well aware of the strengths and weaknesses of their claims and Defendants' defenses.  Thus, Lead Plaintiff and Lead Counsel had a well informed understanding of the relative merits of each side's case with respect to both liability and damages when the Settlement was reached.

### 4.    The Amount of the Settlement Was Reasonable in Light of the Risks of Continued Litigation

The amount of the recovery that the Settlement provides to the Class should be balanced against the obstacles to any recovery in the litigation.  *See Bussie*, 50 F. Supp. 2d at 76 (approving settlement where plaintiffs faced several significant, viable legal defenses "any one of which, if successful, could result in entry of a judgment *with prejudice* against the Class.") (emphasis in original); *Duhaime*, 177 F.R.D. at 68 (same).  The mere possibility that the Class might theoretically have received more if the case had been successfully litigated to conclusion is no reason to deny approval of the Settlement.  *Duhaime*, 177 F.R.D. at 68.  The Court need only determine whether the Settlement falls within a "range of reasonableness."  *In re PaineWebber*

*Ltd. P'ships. Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997) (*quoting Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

As demonstrated by the foregoing, this was a case involving significant risks and challenges. While Lead Plaintiffs would be able to argue that the evidence supports its allegations that Defendants committed securities fraud, they recognize that Defendants did and would argue to the contrary. A favorable outcome for Plaintiffs at summary judgment or trial was far from certain.

Lead Plaintiffs also faced significant obstacles in demonstrating the amount of damages suffered by the Class. Plaintiffs contend that the $3.92 drop in the price of Network Engines common stock upon the December 10, 2003 disclosure is a good measure of the damages and could result in Class-wide measure of damages of many times the amount of the Settlement. Nevertheless, some part of the $3.92 drop could be attributed to adverse information revealed in the Press Release that was not corrective of the alleged prior misstatements or omissions but was subsequent news. Thus, the measure of damages was certain to become a "battle of the experts," the outcome of which would be highly unpredictable. *Headley v. Chrysler Motor Corp.*, 141 F.R.D. 362, 366 (D. Mass. 1991) ("As any practicing lawyer worth his or her salt well knows, the proverbial battle of the experts produces uncertain results.").[4]

---

[4]     *See*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the jury would believe."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *61 (S.D.N.Y. Nov. 26, 2002) ("The determination of damages. . . is a complicated and uncertain process, typically involving conflicting expert opinions. The reaction of a jury to such complex expert testimony is highly unpredictable."); *In re Warner Commc'n Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.").

In addition, this was not a case in which Plaintiffs were assisted in any way by any parallel government investigation or proceeding, nor was this a case that involved any restatement of financial statements, or any admission of wrongdoing, so Lead Plaintiffs did not have the benefit of such factors to help make their case.

Notwithstanding these significant risks and uncertainties, Lead Plaintiffs and Lead Counsel have obtained a substantial recovery for the Class.  In light of the risks, and the amount recovered, the Settlement represents a fair, reasonable and adequate recovery for the Class and should be approved.  *See Bussie*, 50 F. Supp. 2d at 76 ("[T]he reality that the Class would encounter significant, and potentially insurmountable, obstacles to a litigated recovery underscores the reasonableness of the compromise set forth in the Settlement Agreement.").

### 5.       The Settlement Was Reached After Arm's-Length Negotiations

When, as here, a settlement is reached after arm's-length negotiations among experienced counsel, there is an initial presumption that the proposed settlement is fair and reasonable.  *E.g., City P'ship Co*., 100 F.3d at 1043; *Bussie*, 50 F. Supp. 2d at 77; *Duhaime*, 177 F.R.D. at 68. Qualified and experienced counsel for both sides, who were intimately familiar with the facets of this case, negotiated the Settlement.   Moreover, as the negotiations were assisted by the mediation efforts of a retired United States District Judge, there are no hints of collusion with respect to this Settlement.  As explained here and in the Joint Decl., the parties fought hard over the course of nearly three years of litigation.  Plaintiffs overcame Defendants' motion to dismiss the Complaint, formal and informal discovery were conducted, and numerous meeting were held, both in-person and telephonically.  Accordingly, this Settlement is entitled to a presumption of fairness based on the negotiations.

### 6.   The Class Has Reacted Positively to the Settlement

The reaction of the Class is also relevant to this Court's assessment of the Settlement. *See Strougo*, 258 F. Supp. 2d at 258; ("[O]ne indication of the fairness of a settlement is the lack of or small number of objections."); *Bussie*, 50 F. Supp. 2d at 77-78 (noting that favorable reaction of class to settlement, albeit not dispositive, constitutes strong evidence of fairness of proposed settlement and supports judicial approval).

It is rare, in class actions like the case at bar, for no one to object.  Indeed, a certain number of objections is usually to be expected.  *See, e.g., Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected.  This is an infinitesimal number."); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) ("What is meaningful in this regard is that the relatively low objection rate 'militates strongly in favor of approval of the settlement.'"); *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 962 F. Supp. 450, 537 (D.N.J. 1997) ("[T]hat so little negative feedback was received after such an extensive notice and outreach program, weighs in favor of approving of the Proposed Settlement.").

More than 8,000 copies of the Notice, in the form approved by the Court, were mailed to potential Class Members and their nominees.  *See* Schmidt Aff. ¶ 11.  In addition, a summary notice was published in *Investor's Business Daily* on April 27, 2006.  *See* Mills Aff. ¶ 2. As set forth in the notices, Class Members had until June 19, 2006 to file any objections to the Settlement.  Significantly, to date, not even a single shareholder has objected to the Settlement or the Plan of Allocation.  The absence of objections from any of the potential Class Members (including numerous sophisticated financial institutions) who received notice in this case is further support that the Settlement is fair, reasonable and adequate, and that the proposed Plan of Allocation has a reasonable and rational basis, and should by approved by the Court.  *See*

21

*Greenspun*, 492 F.2d at 379 (noting absence of objection by "large, institutional investors, who could be expected to safeguard their interests with a modicum of diligence"); *In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 180 (E.D. Pa. 2000) (noting that no large institutional investors objected to settlement and finding objections "limited").

## V.    THE PLAN OF ALLOCATION IS FAIR AND REASONABE AND SHOULD BE APPROVED

A Plan of Allocation is fair and reasonable so long as it has a "reasonable, rational basis." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). "[T]he adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed allocation is fair and reasonable in light of that information." *In re PaineWebber*, 171 F.R.D. at 133. As with other aspects of the Settlement, the opinion of experienced and informed counsel carries considerable weight. *See In re Charter Commc'n, Inc. Sec. Litig.*, 2005 U.S. Dist. Lexis 14772 (E.D. Mo. June 30, 2005); *In re Heritage Bond Litig.*, 2005 U.S. Dist. Lexis 13555, at *37 (C.D. Cal. June 10, 2005).

Under the Plan of Allocation, the Court-appointed claims administrator, Rust Consulting, Inc., will calculate each Authorized Claimant's "Recognized Claim," based on the information supplied with the Class Member's proof of claim. Each claimant's *pro rata* share of the Net Settlement Fund shall be based upon the claimant's Recognized Claim from transactions in Network Engines common stock during the Class Period, as compared to the total of all accepted claimants' Recognized Claims.

The Plan and the "Recognized Claim" formula reflects Lead Plaintiffs' theory of damages in the action and Lead Counsel's evaluation of the strength and weaknesses of the claims of Class Members. Thus, as set forth in the Plan, a claimant's Recognized Claim is based upon Lead Plaintiffs' contention of the estimated artificial inflation in the price paid for shares of

Network Engines common stock during the Class Period taking into account the limitations imposed by the Private Securities Litigation Reform Action of 1995 (PSLRA).  The Recognized Claim formula generally provides that Class Members who purchased Network Engines common stock during the Class Period and held that stock through the corrective disclosure made at the end of the Class Period will have a claim for the $3.92 per share, the amount by which Plaintiffs contend that the stock was artificially inflated.  Smaller amounts are allowed if the claimant's out of pocket loss was less than this amount or if the 90-day holding value under the PSLRA limited their loss, and only 10% of any losses are realized before the end of the Class Period.  *See* Joint Decl. at ¶ 37.  In addition, the Plan provides that if a Claimant had a gain from his, her or its overall transactions in Network Engines common stock during the Class Period, the value of the Recognized Claim will be zero.  Furthermore, to the extent that a Claimant suffered an overall loss on his, her or its overall transactions in Network Engines common stock during the Class Period, but that loss was less than the Recognized Claim calculated under the Plan of Allocation formula, then the Recognized Claim shall be limited to the amount of the actual loss.  *Id.* at ¶ 38.

The proposed Plan of Allocation is based on Lead Plaintiffs' allegations and theory of damages in the case and is similar in structure to numerous other such plans which have been utilized in securities class action cases.  Accordingly, Lead Plaintiff submits that the Plan has a reasonable and rational basis and is fair and equitable to Class Members and should be approved by the Court.

## VI.    CONCLUSION

For the foregoing reasons, as well as those set forth in the Joint Decl., Lead Plaintiffs respectfully submit that (i) the Class should be finally certified for purposes of the Settlement, (ii) the proposed Settlement is fair, reasonable, and adequate and should be finally approved, and (iii) that the proposed Plan of Allocation has a reasonable, rational basis and fairly allocates the

recovery among Class Members and should be approved. Lead Plaintiffs thus respectfully request that this Court enter the proposed Order and Final Judgment as provided in the Stipulation.

Dated: July 19, 2006                                     Respectfully submitted,


                                                        **MOULTON & GANS, P.C.**


                                                         /s/ Nancy Freeman Gans
                                                        Nancy Freeman Gans
                                                        BBO No. 184540
                                                        55 Cleveland Road
                                                        Wellesley, MA 02481
                                                        (781) 235-2246

                                                        **Liaison Counsel To Lead Plaintiff and the Class**

                                                        **MILBERG WEISS BERSHAD
                                                        & SCHULMAN LLP**


                                                         /s/ George A. Bauer III
                                                        George A. Bauer III
                                                        Andrew Wilmar
                                                        One Pennsylvania Plaza
                                                        New York, NY  10119-0165
                                                        (212) 594-5300

                                                        **Lead Counsel for Plaintiffs and the Class**

                                                        **LERACH COUGHLIN STOIA GELLER
                                                        RUDMAN & ROBBINS LLP**
                                                        Samuel H. Rudman
                                                        David A. Rosenfeld
                                                        200 Broadhollow Road, Suite 406
                                                        Melville, NY 11747
                                                        (631) 367-7100

                                                        **Attorneys for Plaintiffs Sergio and Ricardo
                                                        Guerrera**

24

**BROWER PIVEN, A Professional Association**
Charles J. Piven
The World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
(410) 986-0036

**Plaintiffs' Counsel**

## <u>CERTIFICATE OF SERVICE</u>

I, Nancy Freeman Gans, hereby certify that, on July 19, 2006, a true copy of the foregoing "Plaintiffs' Memorandum of Law in Support of Final Approval of Class Action Settlement and Plan of Allocation" was served upon the attorneys of record for each party via ECF.


  /s/ Nancy Freeman Gans
Nancy Freeman Gans